NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3306
_____

LAZARO JAVIER LARIOS,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA-1 :A73-559-938)
Immigration Judge: Honorable Eugene Pugliese
_____

Argued October 6, 2010

Before:  FUENTES, JORDAN and ALDISERT, *Circuit Judges*.

(Filed:  November 19, 2010)
_____

Regis Fernandez
Sojee Kim   [ARGUED]
18 Green Street – 3rd Fl.
Newark, NJ   07102
        *Counsel for Petitioner*

Paul Fiorino
Allen W. Hausman
Thomas W. Hussey
Jeffrey R. Leist
Tracey McDonald
Ernesto H. Molina, Jr.
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC   20044

Anthony P. Nicastro   [ARGUED]
United States Department of Justice
Office of Immigration
8040N
1331 Pennsylvania Avenue, NW
Washington, DC   20530
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Lazaro Javier Larios appeals an order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for cancellation of removal.  The Immigration Judge ("IJ") denied his application because of Larios's 1998 conviction for terroristic threats under N.J. ANN. § 2C:12-3, which both the IJ and the BIA concluded was a crime involving moral turpitude.  Larios disputes that conclusion.  Larios asserts that § 2C:12-3 encompasses both crimes that qualify as morally turpitudinous as well as crimes that do not.  Because we hold that § 2C:12-3(a) is a divisible statute requiring the application of the modified categorical approach, we will remand to allow an analysis of

Larios's record of conviction to determine if his conduct constituted a crime of moral turpitude.

## I. Factual Background

Larios is a citizen and native of El Salvador, who entered the United States without inspection on or around November 1, 1986. After entering the United States, he moved to New Jersey to live with his brother and sister-in-law. On April 26, 1999, Larios pled guilty in New Jersey Superior Court to terroristic threats in the third degree, under § 2C:12-3, and unlawful possession of a weapon, under New Jersey Statute § 2C:39-50. The plea arose from an incident that occurred at approximately 3:00 a.m. on May 22, 1998, while Larios was standing outside a bar in West New York, New Jersey. A man named Paillaman approached Larios and asked him for directions to another bar. In response, Larios pulled a knife from his pocket, waved it in Paillaman's face, and demanded all of Paillaman's money. Paillaman got away and called the police, who subsequently arrested Larios. After his plea, Larios was sentenced to three years probation and a $200 fine.

On January 9, 2006, an asylum officer with the Department of Homeland Security ("DHS") interviewed Larios in connection with an application for asylum that Larios had filed on July 31, 1995. The DHS officer determined that Larios was not eligible for asylum, and, on January 23, 2006, DHS charged him with being removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i) (2006), as an alien present in the United States without being admitted or paroled. Larios

conceded that he had entered the United States illegally and was therefore removable, but he sought to have the Attorney General cancel his removal and adjust his status pursuant to 8 U.S.C. § 1229b(b), which allows for discretionary relief to nonpermanent resident aliens who meet certain eligibility requirements.

On October 18, 2006, the IJ denied Larios's application for cancellation of removal. The IJ determined that Larios was statutorily ineligible for cancellation pursuant to § 1229b(b)(1)(C) because his conviction for terroristic threats constituted a crime of moral turpitude under 8 U.S.C. § 1182(a)(2). New Jersey Criminal Statute § 2C:12-3, titled "Terroristic Threats," provides in pertinent part:[1]

> a. A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience. …

N.J. STAT. ANN. § 2C:12-3(a). In the IJ's view, that section of the statute involves acts of moral turpitude.[2]

---

[1] It is undisputed that Larios pled guilty to terroristic threats in the third degree in violation of § 2C:12-3. The IJ noted that subsections (a) and (b) both criminalize terroristic threats in the third degree and that, "[i]n the present case the Court does not have the indightment [sic] for the third degree terroristic threats charge. ... [Larios's conviction] was a downgraded charge and ... there was no written indightment [sic] or information or other type of charging document to reflect that there was a new charge." (AR at 62.) The IJ therefore found it unclear from the record whether Larios pled guilty to subsection (a) or (b). However, the plea transcript specifically states that Larios pled to terroristic threats under subsection (a).

[2] Because the IJ found the record to be unclear as to which section Larios pled, the IJ explored subsection (a) and (b) and found that both sections cover turpitudinous conduct.

4

On July 9, 2008, the BIA adopted and affirmed the IJ's decision and dismissed Larios's appeal. The BIA explained that, because "the intentional transmission of threats is evidence of a vicious motive or a corrupt mind" (AR at 2), "[Larios's] conviction … does involve moral turpitude." (AR at 3.) Larios then submitted this timely petition for review.

## II.     Discussion[3]

### A.     *Standard of Review*

Because the BIA not only adopted and affirmed the decision of the IJ, but also provided its own reasoning for its decision, we review both the decision of the IJ and that of the BIA. *Hashmi v. Att'y Gen.*, 531 F.3d 256, 259 (3d Cir. 2008). We review the BIA's legal determinations de novo. *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005). However, "[w]e ... afford *Chevron* deference to the BIA's definition of moral turpitude," *Knapik v. Ashcroft*, 384 F.3d 84, 87 n.3 (3d Cir. 2004), as well as to "BIA[] determination[s] that reckless endangerment crimes may involve moral turpitude." *Id.* at 88. On the other hand, "in determining what the elements are of a particular criminal statute deemed to implicate moral turpitude, we do not defer to the BIA." *Id.* Because, "we owe no deference to the IJ's interpretation of a state criminal statute," we will parse the elements of the statute ourselves and then apply to that the BIA's conception of what constitutes a crime of moral turpitude. *Partyka*, 417 F.3d at 411.

_____

[3] We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a).

B.    *Overview of Applicable Law*

Pursuant to 8 U.S.C. § 1229b(b), a nonpermanent resident alien may file an application with the Attorney General for discretionary cancellation of removal and adjustment of status.  The burden is on the alien to establish eligibility for such relief by a preponderance of the evidence.  8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1240.8(d); *see also Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 464 n.2 (3d Cir. 2009) ("An alien bears the burden of establishing his eligibility for discretionary cancellation of removal.").

An alien who has committed a crime involving moral turpitude is ineligible for discretionary cancellation of removal and adjustment of status under § 1229b(b).  8 U.S.C. § 1182(a)(2)(A)(i) (providing that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a crime involving moral turpitude (other than a purely political offense) ... is inadmissible").  "In determining whether a state law conviction constitutes a [crime involving moral turpitude] ... we have historically applied a categorical approach, focusing on the underlying criminal statute rather than the alien's specific act." *Jean-Louis*, 582 F.3d at 465.  Under the categorical approach, "we read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Partyka*, 417 F.3d at 411.  As a general rule, a criminal statute is determined to define a crime as categorically involving moral turpitude "only if all of the conduct [the statute] prohibits is turpitudinous." *Id.*  If all of the conduct prohibited by the statute involves moral turpitude, the defendant's conviction under that statute was necessarily

6

one for a crime involving moral turpitude and our analysis ends. *In re Ajami*, 22 I. & N. Dec. 949 (BIA 1999). It is only if "a statute covers both turpitudinous and non-turpitudinous acts" that we turn to a modified categorical approach and "look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude." *Partyka*, 417 F.3d at 411.

In considering whether a statute encompasses turpitudinous conduct, we have held that "the hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation."[4] *Partyka*, 417 F.3d at 414. While the Immigration and Nationality Act ("INA") does not define "moral turpitude," *Partyka*, 417 F.3d at 413, the BIA has defined it as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *Knapik*, 384 F.3d at 89 (citing *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (BIA 1994)). An act is turpitudinous if it "is accompanied by a vicious motive or a corrupt mind." *Partyka*, 417 F.3d at 413.

---

[4] Crimes that are committed without "evil intent" or unaccompanied by "a vicious or corrupt mind" have been found not to involve moral turpitude. *Partyka*, 417 F.3d at 413; *see also United States v. Rebelo*, 646 F. Supp. 2d 682, 692 (D.N.J. 2009) (noting that negligent assault with a deadly weapon under N.J. STAT. ANN. § 2C:12-1a(2) does not constitute a crime involving moral turpitude); *In Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 619 (BIA 1992) (finding that assault committed with criminal negligence does not constitute a crime of moral turpitude).

7

C.    *Application*

Applying the foregoing to the statute at issue in this case, we ask whether

§ 2C:12-3(a) prohibits both turpitudinous and non-turpitudinous conduct.  Section 2C:12-

3(a) prohibits threats to commit a "crime of violence."  Therefore, to ascertain whether

the least culpable conduct necessary to sustain a conviction under § 2C:12-3(a) involves

moral turpitude, we may begin by determining what actions qualify as crimes of

violence.[5]  Then, if the least culpable conduct constituting a "crime of violence" is non-

turpitudinous, the statute can rightly be considered as being divisible.

Though the parties have not directed our attention to, nor have we found, any

provision of the New Jersey Criminal Code or relevant precedent from the New Jersey

Courts that defines a "crime of violence,"[6] we have previously analyzed a nearly

---

[5] Larios does not argue that a threat cannot be a crime of moral turpitude, and several BIA cases have found that moral turpitude is implicated in threatening behavior. *See In re Ajami*, 22 I. & N. Dec. at 952 ("We find that the intentional transmission of threats is evidence of a vicious motive or a corrupt mind" and that the "respondent was [thus] convicted of a crime involving moral turpitude."); *Matter of B-*, 6 I. & N. Dec. 98 (BIA 1954) (finding crimes involving usury by intimidation and threats of bodily harm to involve moral turpitude); *Matter of C-*, 5 I. & N. Dec. 370 (BIA 1953) (finding threats to take property by force to involve moral turpitude); *Matter of F-*, 3 I. & N. Dec. 361 (C.O. 1948; BIA 1949) (finding the mailing of menacing letters demanding property and threatening violence to involve moral turpitude); *see De Leon-Ochoa v. Att'y Gen.*, --- F.3d ----, 2010 WL 3817082, at *7 (3d Cir. 2010) (Aldisert, J.) ("[A]ccording to the Board's own internal policies, '[u]npublished decisions are binding on the parties to the decision but are not considered precedent for unrelated cases.'").

[6] One unpublished case lists crimes of violence as used in § 2C:12-3 to include simple assault, kidnapping, sexual assaults, robbery, carjacking, arson, and burglary. *State ex rel. M.R.*, No. FJ-21-475-06, 2008 WL 4841015, at *5 (N.J. Super. Ct. App. Div. Nov. 10, 2008).  In another case the New Jersey Supreme Court referenced in passing

8

identical statute from Pennsylvania. In *Bovkun v. Ashcroft*, 283 F.3d 166, 170 (3d Cir. 2002) (citation omitted), we considered 18 Pa. Cons. Stat. § 2706[7] and looked to 18 U.S.C. § 16 for illumination of the meaning of "crime of violence." We determined that the term "crime of violence," as used in the Pennsylvania statute, is, as described in 18 U.S.C. § 16, an offense that has as an element "the use, attempted use, or threatened use of physical force against the person or property of another." *Bovkun,* 283 F.3d at 170. We likewise adopt that definition of the term for the purposes of analyzing New Jersey's § 2C:12-3(a).

Using that definition, it appears that in New Jersey simple assault is encompassed within the meaning of "crime of violence," as it, in turn, is defined as "(1) attempt[ing] to cause or purposely, knowingly, or recklessly caus[ing] bodily injury to another; or, (2) negligently caus[ing] bodily injury to another with a deadly weapon; or, (3) attempt[ing] by physical menace to put another in fear of imminent serious bodily injury." N.J. STAT. ANN. § 2C:12-1(a). Simple assault, however, is not generally understood to be a crime of moral turpitude. *See e.g., In re Sejas*, 24 I. & N. Dec. 236, 237 (BIA 2007) (noting that "as a general rule, a simple assault and battery offense does not involve moral

_____

"crimes involving violence," and cited simple assault, death by automobile, aggravated assault with a deadly weapon, terroristic threats, reckless endangerment, and aggravated arson. *In re Witherspoon,* 3 A.3d 496, 504 (N.J. 2010) (discussing those crimes in the context of attorney disbarment).

[7] Terroristic Threats, 18 Pa. Cons. Stat. § 2706 (1998) provides: "A person is guilty of a misdemeanor of the first degree if he threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience."

turpitude"); *Fualaau*, 21 I. & N. Dec 475, 477 (BIA 1996) (holding that simple assault is not a crime of moral turpitude). It thus appears that the term "crime of violence," as used in § 2C:12-3(a), includes simple assault, which is a non-turpitudinous crime.

Because a conviction under § 2C:12-3(a) can be sustained by proving a threat to commit simple assault, and because simple assault is itself non-turpitudinous, we conclude that the threat is likewise non-turpitudinous. Thus, § 2C:12-3(a) is divisible, because it encompasses both turpitudinous and non-turpitudinous conduct, which means that Larios's conviction should have been evaluated under the modified categorical approach, rather than the categorical approach.

## III.    Conclusion

For the foregoing reasons, Larios's conviction for terroristic threats in the third degree must be analyzed under the modified categorical approach to determine if it constitutes a crime involving moral turpitude. Only then can it be determined if he is statutorily ineligible for cancellation of removal under 8 U.S.C. § 1229b(b). We will therefore remand so that the appropriate immigration authorities can engage in that analysis of his record of conviction.