PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-2781 and 15-3068
_____

JHONATHAN VICTORIA JAVIER,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA,
                                        Respondent
_____

On Petition for Review of a Decision of the Board of
Immigration Appeals
(A059-303-967)
Immigration Judge: Walter Durling
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2016
_____

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ,
*Circuit Judges*.

(Opinion Filed: June 9, 2016)

Raymond G. Lahoud, Esq.
Baurkot & Baurkot
227 South 7th Street
Easton, PA 18042

*Attorney for Petitioner*

Elizabeth R. Chapman, Esq.
Kristin A. Moresi, Esq.
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Attorneys for Respondent*

_____

OPINION

_____


GREENAWAY, JR., *Circuit Judge*.

Jhonathan Victoria Javier petitions for review of two orders of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ's") order of removal. For the reasons that follow, we will dismiss for lack of jurisdiction the petition for review of the BIA's order dated July 13, 2015 and deny the petition for review of the BIA's order dated August 19, 2015.

## I.  BACKGROUND

Javier is a citizen and native of the Dominican Republic. In 2009, he entered the United States as a lawful permanent resident. In July 2013, Javier was arrested for carrying a firearm in public, in violation of 18 Pa. Cons. Stat. § 6108, and for making terroristic threats, in violation of 18 Pa. Cons. Stat. § 2706(a)(1). He was convicted of both charges in the Court of Common Pleas of Philadelphia County, Pennsylvania, in March 2014.

Later in 2014, the Department of Homeland Security issued Javier a notice to appear, charging him with removability due to his convictions. Following a removal hearing held on April 2, 2015,[1] the IJ issued an oral decision concluding that Javier was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) as an alien convicted of a "crime involving moral turpitude" based on his conviction for terroristic threats.[2] The IJ also concluded that Javier was removable

---

[1] At Javier's request, the IJ continued his removal proceedings while Javier pursued post-conviction relief in state court. At the April 2, 2015 hearing, Javier informed the IJ that his requests for post-conviction relief had been denied.

[2] Section 1227(a)(2)(A)(i) also requires that the "crime involving moral turpitude" be one for which "a sentence of one year or longer may be imposed" and that the crime be "committed within five years . . . after the [alien's] date of admission." 8 U.S.C. § 1227(a)(2)(A)(i). These requirements are not at issue in this petition.

pursuant to 8 U.S.C. § 1227(a)(2)(C) as an alien convicted of a "firearm offense" based on his conviction for carrying a firearm in public.

Javier appealed to the BIA. In an order dated August 19, 2015, the BIA affirmed the IJ's order of removal and dismissed Javier's appeal based solely on Javier's terroristic threats conviction.[3] The BIA explained that the offense defined by 18 Pa. Cons. Stat. § 2706(a)(1) involves "an intentional action whose goal is to inflict [] psychological distress [that follows an invasion of the victim's sense of personal security which] violates the norms of society to such a degree as to constitute moral turpitude." A.R. 4 (citing *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996)). The BIA concluded that it "need not address the

_____

[3] Javier filed a notice of appeal of the IJ's April 2, 2015 order but did not submit a brief until July 10, 2015, three days before the BIA issued its opinion. On July 13, 2015, the BIA summarily affirmed the IJ's decision on the basis that Javier's notice of appeal was insufficient to apprise the BIA of the grounds for Javier's appeal. Javier then resubmitted his brief along with a motion for reconsideration explaining the reasons for the delay in transmitting his brief. In its August 19, 2015 order, the BIA explained that it had accepted Javier's reasons and sua sponte reopened Javier's appeal to consider the arguments in his brief. Javier has petitioned for review of both the BIA's July 13, 2015 and August 19, 2015 orders; by Order dated August 26, 2015, we consolidated Javier's petitions.

4

question of whether [Javier's] conviction for carrying firearms in public in violation of Pennsylvania law also renders [him] removable." *Id.* Javier then submitted this timely petition, arguing that the BIA erred as a matter of law in concluding that a section 2706(a)(1) offense is categorically a "crime involving moral turpitude" and that the IJ erred as a matter of law in concluding that a section 6108 offense is categorically a "firearm offense."

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a). We "review the administrative record on which the final removal order is based." *Li Hua Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011) (quoting *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005)). "[T]hat means reviewing only the BIA's decision" unless the BIA's decision "specifically references the IJ's decision." *Id.*[4]

We review legal determinations by the BIA de novo, "subject to established principles of deference." *Wang v.*

---

[4] Thus, contrary to Javier's assertion, we lack jurisdiction to review the IJ's decision that 18 Pa. Cons. Stat. § 6108 constitutes a "firearm offense" because the BIA did not reference the IJ's decision on this issue. We also lack jurisdiction to review the BIA's July 13, 2015 order dismissing Javier's appeal because it is not a final order of removal; the BIA reopened Javier's case. Therefore, we will dismiss for lack of jurisdiction Javier's petition for review of the BIA's July 13, 2015 order.

*Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004). We afford deference to the BIA's definition of moral turpitude, but we owe no deference to the BIA's interpretation of a state criminal statute. *See Knapik v. Ashcroft*, 384 F.3d 84, 87 n.3, 88 (3d Cir. 2004).

## III. ANALYSIS

"In determining whether a state law conviction constitutes a [crime involving moral turpitude] . . . we[] have historically applied a 'categorical' approach, 'focusing on the underlying criminal statute rather than the alien's specific act.'" *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465 (3d Cir. 2009) (quoting *Knapik*, 384 F.3d at 88). Under the categorical approach, "we read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005). If "a statute covers both turpitudinous and non-turpitudinous acts" then we turn to a modified categorical approach and "look to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude." *Id.* "The modified categorical approach still 'retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.'" *United States v. Brown*, 765 F.3d 185, 190 (3d Cir. 2014) (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013)).

As a general rule, a criminal statute is determined to define a crime as categorically involving "moral turpitude only if all of the conduct [the statute] prohibits is turpitudinous." *Partyka*, 417 F.3d at 411 (quoting *Smalley v. Ashcroft*, 354 F.3d 332, 336 (5th Cir. 2003)). "[T]he hallmark of moral turpitude is a reprehensible act committed

with an appreciable level of consciousness or deliberation." *Mahn v. Att'y Gen.*, 767 F.3d 170, 174 (3d Cir. 2014) (quoting *Partyka*, 417 F.3d at 414). Although the Immigration and Nationality Act does not define "moral turpitude," "the BIA and this Circuit have defined morally turpitudinous conduct as 'conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general.'" *Id.* (quoting *Knapik*, 384 F.3d at 89). An act is turpitudinous if it "is accompanied by a vicious motive or a corrupt mind." *Partyka*, 417 F.3d at 413 (quoting *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (BIA 1994)).

Here, Title 18, Section 2706(a) of the Pennsylvania Consolidated Statutes is divisible into three variations of the same offense—i.e., subsections (a)(1), (a)(2), and (a)(3). *See Brown*, 765 F.3d at 191–92. Javier was convicted under section 2706(a)(1). *See* A.R. 230 (Order of Sentence stating that Javier was convicted under "18 § 2706 §§ A1," which the Order entitled "Terroristic Threats W/ Int To Terrorize Another"). Section 2706(a)(1) states that "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: [] commit any crime of violence with intent to terrorize another." 18 Pa. Cons. Stat. § 2706(a)(1). As discussed below, because of this specific intent requirement, we need not look any further to determine that a violation of section 2706(a)(1) is a "crime involving moral turpitude." *Cf. Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa. Super. 2003) ("[O]ne commits terroristic threats [] by threatening a crime of violence with specific intent to cause terror (subsection 1), or by threatening anything that causes terror

7

with reckless disregard of the risk of causing terror (subsection 3).").[5]

Javier argues that "crime of violence" encompasses simple assault, which he contends is a non-turpitudinous crime. Therefore, he contends, the statute encompasses the non-turpitudinous crime of threatening to commit simple assault and the BIA erred in concluding that section 2706(a)(1) is categorically a "crime involving moral turpitude."

We disagree. Our focus in determining whether section 2706(a)(1) is categorically a crime involving moral turpitude is not the threatened "crime of violence," but the communication of the threat and its requisite scienter. After all, the harm that section 2706(a)(1) seeks to prevent is not the "crime of violence," but rather the consequences of the threat—i.e., "the psychological distress that follows from an invasion of another's sense of personal security." *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000) (quoting *Tizer*, 684 A.2d at 600). And section 2706(a)(1) unambiguously requires that the threat be communicated with a specific "intent to terrorize." 18 Pa. Cons. Stat. § 2706(a)(1); *Walker*, 836 A.2d at 1001.

---

[5] Javier argues that the BIA erred by not applying the modified categorical approach to evaluate whether his conviction constituted a crime involving moral turpitude. This argument is unavailing. Under either the categorical approach or modified categorical approach, we would still conclude that Javier was convicted of a crime involving moral turpitude.

A threat communicated with intent to terrorize is of a different character than simple assault, and therefore we do not equate such a threat with simple assault. *See Chanmouny v. Ashcroft*, 376 F.3d 810, 814–15 (8th Cir. 2004) (reasoning that Minnesota terroristic threat statute's "requisite intent to terrorize [] serves to distinguish Chanmouny's offense from simple assault" because "[s]imple assault typically is a general intent crime, and it is thus different in character"). We conclude that a threat communicated with a specific intent to terrorize is an act "accompanied by a vicious motive or a corrupt mind" so as to be categorically morally turpitudinous. *See Partyka*, 417 F.3d at 413. Because the BIA did not legally err by so concluding, we will deny Javier's petition.[6]

---

[6] Javier's reliance on *Larios v. Attorney General*, 402 F. App'x 705 (3d Cir. 2010), is unavailing. There, a panel of this Court found that an analogous New Jersey terroristic threat statute encompassed non-turpitudinous conduct because it could be applied to a threat to commit simple assault. *Id.* at 709. The panel reasoned that because simple assault is non-turpitudinous, a threat to commit simple assault is non-turpitudinous. *Id. Larios* is a not precedential opinion which we are not bound to follow. We disagree with the panel's focus on the "crime of violence," rather than the criminalized conduct itself—which requires a malicious scienter. It has long been established that "moral turpitude normally inheres in the intent." *See, e.g.*, *Jean-Louis*, 582 F.3d at 469 (quoting *Matter of Abreu-Semino*, 12 I. & N. Dec. 775, 777 (BIA 1968)); *see also Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) ("[C]orrupt scienter is the touchstone of moral turpitude."). Therefore, we focus on the intent required

## IV.    CONCLUSION

For the foregoing reasons, we will dismiss for lack of jurisdiction the petition for review of the BIA's order dated July 13, 2015 and deny the petition for review of the BIA's order dated August 19, 2015.

---

by section 2706(a)(1) and agree with the BIA that the offense as defined under section 2706(a)(1) is categorically a crime involving moral turpitude.