**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2594
_____

LAZARO JAVIER LARIOS,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. A073-559-938)
Immigration Judge: Annie S. Garcy
_____

Argued March 4, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE,
*Circuit Judges*

(Opinion Filed: October 14, 2020)

Regis Fernandez **[Argued]**
7 Federal Square
Newark, NJ 07102
        *Attorney for Petitioner*

Raya Jarawan **[Argued]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

Anthony C. Payne
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge.*

To determine if a noncitizen convicted of a state offense is subject to immigration consequences prescribed in federal law, the Supreme Court has instructed courts to compare whether the elements of the state offense define a crime that is the same as or narrower than the generic federal offense. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). This

analysis, which has come to be known as the "categorical approach," sounds simple in theory but has proven difficult (and often vexing) in practice, necessitating a "modified categorical approach" and generating an evolving jurisprudence around when the categorical or modified categorical approach applies.

That difficulty is borne out in the convoluted history of this case. Here, in what is now Lazaro Javier Larios's third petition for review from prior reversals, the Board of Immigration Appeals (BIA) applied the categorical approach and held Larios ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) for having been convicted of "a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Because we conclude the crime at issue—New Jersey's terroristic-threats statute, N.J. Stat. Ann. § 2C:12-3(a)—should have been analyzed under the modified categorical approach, and, under that approach, the particular offense of which Larios was convicted is not a crime involving moral turpitude, we will grant the petition for review.

## I.    Factual and Procedural History

For nonpermanent residents who meet the eligibility criteria outlined in 8 U.S.C. § 1229b(b)(1), cancellation of removal is a discretionary form of relief that "allows [them] to remain in the United States despite being found removable." *Barton v. Barr*, 140 S. Ct. 1442, 1445 (2020). But those who have "been convicted of an offense under section 1182(a)(2)," 8 U.S.C. § 1229b(b)(1)(C)—which includes "a crime involving moral turpitude" (CIMT), *id.* § 1182(a)(2)(A)(i)(I)—are ineligible for cancellation of removal.

3

Larios, an El Salvadoran national, entered the country without inspection in 1986. In 1998, Larios was approached by someone outside of a bar and, allegedly because he believed he would be robbed, pulled out a knife and caused the person to flee. Larios pleaded guilty to "threaten[ing] to commit any crime of violence with the purpose to terrorize another . . . or in reckless disregard of the risk of causing such terror" in violation of N.J. Stat. Ann. § 2C:12-3(a). Some years later in 2006, he was served a Notice to Appear and entered removal proceedings. Since then, Larios has been seeking cancellation of removal.

The IJ and the BIA in 2008 determined that Larios's crime of conviction was a categorical match for a CIMT, rendering him ineligible for cancellation of removal.

In 2008, Larios filed his first of three petitions for review to this Court and argued that his crime could not qualify as a CIMT because, under the categorical approach, the elements of a state statute must define an offense not broader than the federal statute, whereas here, "the least culpable conduct necessary to sustain a conviction under the [New Jersey] statute," *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005)—a threat to commit "simple assault"—did not meet the criteria to qualify as "turpitudinous" under § 1182(a)(2)(A)(i)(I) and the relevant case law, *Larios v. Att'y Gen.*, 402 F. App'x 705, 708–09 (3d Cir. 2010). We agreed that, because it swept in simple assault, the statute encompassed both turpitudinous and non-turpitudinous conduct, and based on our understanding of the categorical approach at the time, we held the statute was divisible. *See id.* at 709. That understanding changed a few years later with *Descamps v. United States*, 570 U.S. 254 (2013), but our

4

divisibility analysis then focused on whether a statute comprised both turpitudinous and non-turpitudinous conduct, rather than whether it comprised different, alternative elements (one or more of which may be turpitudinous). Regardless, the purpose of the modified categorical approach has always been to determine which portion of the statute formed the basis for the petitioner's conviction. Thus, we remanded for the agency to apply the modified categorical approach to determine whether Larios had been convicted of the turpitudinous or the non-turpitudinous part of the statute. *See id.*

On remand, however, the IJ declined to apply the modified categorical approach and instead concluded that the categorical approach applied after all. The IJ reasoned that simple assault, under New Jersey law, N.J. Stat. Ann. § 2C:1-4(b), was not a "crime" at all, only "a disorderly persons offense [or] . . . a petty disorderly persons offense," *id.* § 2C:12-1(a). *See* A.R. 675–76 (citing *State v. MacIlwraith*, 782 A.2d 964, 966 (N.J. App. Div. 2001)). And because New Jersey's terroristic-threats statute covers only threats to "commit a[] *crime* of violence," N.J. Stat. Ann. § 2C:12-3(a) (emphasis added), the IJ explained, a threat to commit simple assault was not covered by that statute, excluding the only non-turpitudinous application and, hence, the need for the modified categorical approach.

Applying the categorical approach yet again, the IJ relied on BIA precedent that statutes criminalizing "the intentional transmission of threats of violence are categorically CIMTs," A.R. 676 (citing *Matter of Ajami*, 22 I. & N. Dec. 949, 952 (BIA 1999)), and the New Jersey Model Jury Charge's description of a terroristic threat as one "convey[ing] menace or fear," *id.* (citing New Jersey Model Criminal Jury

5

Charge, § 2C:12-3(a), at 2), to conclude that the statute covered only turpitudinous offenses and was therefore a categorical match with § 1182(a)(2)(A)(i)(I).

The BIA affirmed, summarizing the IJ's analysis but, for its own part, stating only that it agreed that the actus reus, simple assault, was not a "crime of violence" under New Jersey law. That explanation left unclear whether the BIA had compared the mens rea of the state offense—"purpose" or "reckless disregard," N.J. Stat. Ann. § 2C:12-3(a)—to the generic offense, and under that analysis, whether the New Jersey statute was still a categorical match for § 1182(a)(2)(A)(i)(I)'s generic offense. So after Larios filed his second petition for review, we granted the Government's motion to remand "to allow the Board to clarify whether its analysis was properly limited to the 'crime of violence' element of the statute, or, alternatively, to allow the Board to consider the mental state element." A.R. 54.

This time on remand, the BIA held the mens rea element, too, was a categorical match, treating both purpose and reckless disregard as "an intentional or vicious state of mind," A.R. 5, and treating a threat with that mens rea as an "act committed with an appreciable level of consciousness or deliberation," *id.* at 4 (quoting *Partyka*, 417 F.3d at 414). So it again rejected Larios's cancellation-of-removal application.

We now consider Larios's third, timely filed petition for review.

## II.    Jurisdiction and Standard of Review

The BIA exercised jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, and we exercise jurisdiction over

the question of law presented by this petition for review under 8 U.S.C. § 1252(a).  Our review of that legal question is plenary.  *Moreno v. Att'y Gen.*, 887 F.3d 160, 163 (3d Cir. 2018).

So long as its determination is "based on a permissible interpretation" of the immigration statute, we give deference to "the BIA's definition of moral turpitude, . . . as well as the BIA's determination that a certain crime involves moral turpitude" in its published opinions.  *Mehboob v. Att'y Gen.*, 549 F.3d 272, 275 (3d Cir. 2008) (citation omitted); *see De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 349 (3d Cir. 2010).  We do not, however, defer to "the BIA's parsing of the elements of the underlying [state] crime," nor do we accord any deference to an opinion—like the one we review today—constituting an "unpublished, non-precedential decision issued by a single BIA member."  *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014).

## III.    Discussion

For Larios, the sticking point in terms of his eligibility for cancellation of removal is whether his conviction for making a terroristic threat under N.J. Stat. Ann. § 2C:12-3(a) is a CIMT.  First, we explain why § 2C:12-3(a) should be analyzed under the modified categorical approach rather than the categorical approach, and, second, we apply the modified categorical approach to the particular alternative under which Larios was convicted: "threaten[ing] to commit any crime of violence with the purpose to terrorize another . . . or in reckless disregard of the risk of causing such terror."  N.J. Stat. Ann. § 2C:12-3(a).

A.    The Modified Categorical Approach Applies
      Here

When a state conviction is subject to federal criminal or immigration consequences, we use the now-familiar categorical approach or modified categorial approach to determine whether a petitioner's crime of conviction matches the generic federal offense—here, whether N.J. Stat. Ann. § 2C:12-3(a) is a categorical match for § 1182(a)(2)(A)(i)(I) and thus qualifies as a CIMT.

In the ordinary case, we analyze state statutes under the categorical approach.  Under that framework, we consider whether the "least culpable conduct hypothetically necessary to sustain a conviction under the statute" would also be covered by the federal statute.  *Moreno*, 887 F.3d at 163 (quoting *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 471 (3d Cir. 2009)).  A categorical match occurs if a state statute's elements define a crime identical to or narrower than the generic crime because "anyone convicted under that law is necessarily . . . guilty of all the [generic crime's] elements." *Descamps*, 570 U.S. at 261 (alterations in original) (internal quotation marks and citation omitted).  But if the state offense covers more conduct, then it is overbroad and does not match the generic offense.  The approach is "categorical" because we look only to the elements of the state offense, "*not* to the particular facts underlying th[at] conviction[]." *Id.* at 161 (internal quotation marks and citation omitted).

This analysis is straightforward enough for an indivisible state offense with a single set of elements.  But where the statute is divisible—that is, "(1) the statute of conviction has alternative elements, and (2) at least one of the alternative divisible categories would, by its elements, be a

8

match with [the] generic federal crime," a CIMT—then, the so-called "modified categorical approach" applies instead. *Hillocks v. Att'y Gen.*, 934 F.3d 332, 339 (3d Cir. 2019) (internal quotation marks and citation omitted). The modification is a small one, allowing the court to review "a limited set of documents" for the sole purpose of identifying whether the petitioner was convicted of a CIMT or non-CIMT alternative. *Id.* at 338. This modification serves "not as an exception, but instead as a tool . . . [for] preserv[ing] the categorical approach's basic method: comparing [statutory] elements with the generic offense's," while disregarding the particular facts of the crime the petitioner committed. *Descamps*, 570 U.S. at 263.

When the modified categorical approach is "[a]pplied in [this] way—which is the only way [the Supreme Court has] ever allowed," *id.*, it retains its proper focus on the elements of the crime: the actus reus, mens rea, and causation. These are what "the State must prove . . . beyond a reasonable doubt" to sustain a conviction, *State v. Tindell*, 10 A.3d 1203, 1217 (N.J. Super. Ct. App. Div. 2011), or, "at a plea hearing, . . . what the defendant necessarily admits when he pleads guilty," *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (citation omitted). Disjunctives in statutes often provide "textual clue[s]" of divisibility, *Hillocks*, 934 F.3d at 343, but they are not dispositive because statutes that merely "enumerate[] various factual means of committing a single element" are not in fact divisible, *Mathis*, 136 S. Ct. at 2249.

Here, the parties dispute whether N.J. Stat. Ann. § 2C:12-3(a) is divisible and requires application of the modified categorical approach. On *de novo* review, *see Moreno*, 887 F.3d at 163, we agree with Larios that the BIA

9

erred in treating the statute as indivisible and applying the categorical approach.

In relevant part, New Jersey's terroristic-threats statute provides:

> A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.

N.J. Stat. Ann. § 2C:12-3(a) (1981).

In view of the numerous disjunctives, we look to state law to see whether these are alternative elements delineating separate offenses, or merely alternative means to commit one offense. *See, e.g.*, *Hillocks*, 934 F.3d at 339. "Whe[re] a ruling from an 'authoritative source[] of state law' resolving this means-or-elements question 'exists, a . . . judge need only follow what it says,'" *Singh v. Att'y Gen.*, 839 F.3d 273, 283 (3d Cir. 2016) (second and third alterations in original) (quoting *Mathis*, 136 S. Ct. at 2256), and here, fortunately, we have that authoritative source in a New Jersey Superior Court decision.[1]  In *State v. Tindell*, 10 A.3d 1203 (N.J. Super Ct.

---

[1] Where "there is no opinion or other persuasive data on point from the Supreme Court of [New Jersey], [] it is appropriate to rely on a decision of the Superior Court of [New

App. Div. 2011), the court made clear that § 2C:12-3(a) incorporates three alternatives, each of which has the same actus reus, i.e., "threatens to commit any crime of violence," N.J. Stat. Ann. § 2C:12-3(a), and a mens rea incorporating either "purpose . . . or . . . reckless disregard of the risk," *id.*, but a different, alternative causation element: (1) "to terrorize another," (2) "to cause evacuation," or (3) "to cause serious public inconvenience," *id. See Tindell*, 10 A.3d at 1217–18; *see also State v. Conklin*, 927 A.2d 142, 143 (N.J. Super Ct. App. Div. 2007) (same); New Jersey Model Criminal Jury Charge, § 2C:12-3(a) (same).[2]

In sum, N.J. Stat. Ann. § 2C:12-3(a) requires the modified categorical approach because it has "alternative elements," and the Government does not dispute that "at least one of the alternative divisible categories would, by its

---

Jersey]." *Singh*, 839 F.3d at 283 n.5 (internal quotation marks omitted).

[2] There is no indication New Jersey treats the mens rea of "purpose . . . or [] reckless disregard" as itself divisible into alternative elements. Though we have previously determined that Pennsylvania's terroristic-threats statute, *see* 18 Pa. Const. Stat. § 2706(a) (1998), also based on § 211.3 of the Model Penal Code, is divisible as to its mental states, our analysis relied on the specific structure of that statute, which listed the disjunctive means rea in only the third subsection, and not the first two. New Jersey's statute is structured differently, and thus, we follow *Tindell* and the Model Jury Charge in treating purpose and reckless disregard as indivisible means of satisfying the mens rea element under N.J. Stat. Ann. § 2C:12-3(a).

11

elements, be a match with a generic federal crime." *Hillocks*, 934 F.3d at 339 (internal quotation marks and citation omitted). We turn now to applying this approach to Larios's crime of conviction.

### B.    Larios's Crime of Conviction Is Not a CIMT

Under the modified categorical approach, we must first consider "what crime, with what elements, a defendant was convicted of" and then "compare that crime, as the categorical approach commands, with the [CIMT] generic offense." *Mathis*, 136 S. Ct. at 2249.

### 1.    *Larios's Crime of Conviction*

Under *Shepard v. United States*, 544 U.S. 13 (2005), courts may consult only "a limited class of documents" specified by the Supreme Court to determine which alternative version of the crime formed the basis for a petitioner's conviction. *Mathis*, 136 S. Ct. at 2249. These so-called *Shepard* documents are comprised of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," but not "police reports or complaint applications." *Shepard*, 544 U.S. at 16.

Here, the transcript of Larios's plea colloquy reveals that he was convicted "under subsection (a), [of a] threat to commit . . . a crime of violence." A.R. 384. During the colloquy, the judge also confirmed that Larios was pleading guilty to "threatening to commit an assault upon a person . . . by—causing [him] to be in fear." A.R. 391. Thus, in full, the alternative offense that formed the basis for Larios's conviction is "threaten[ing] to commit any crime of violence

12

with the purpose to terrorize another . . . or in reckless disregard of the risk of causing such terror." N.J. Stat. Ann. § 2C:12-3(a). The remaining question before us is whether that alternative is a CIMT.

## 2. *CIMT Analysis*

To determine whether Larios's alternative is a categorical match, we must first ascertain the elements of the generic offense. There is no statutory definition of a crime involving moral turpitude, so we draw on "long-established BIA principles and decisions of our Court," *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004) (internal citation omitted), for its elements: (1) an actus reus of "a reprehensible act . . . . that is inherently base, vile, or depraved contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general"; and (2) a mens rea of "an appreciable level of consciousness or deliberation," signifying "a vicious motive or a corrupt mind," *Javier v. Att'y Gen.*, 826 F.3d 127, 130–31 (3d Cir. 2016) (citations omitted); *see Francisco-Lopez v. Att'y Gen.*, 970 F.3d 431, 435 (3d Cir. 2020).

With this generic construction in mind, we home in on the elements of Larios's crime of conviction: an actus reus of "threaten[ing] to commit any crime of violence," a mens rea of "purpose . . . or [] reckless disregard," and a causation element of "terroriz[ing] another." N.J. Stat. Ann. § 2C:12-3(a). We have already settled that "a threat to: [] commit any crime of violence with intent to terrorize another" is a CIMT. *Javier*, 826 F.3d at 131 (alteration in original); *see also Ajami*, 22 I. & N. Dec. at 952 (stating that "the intentional transmission of threats is evidence of a vicious motive or a corrupt mind"). The particular alternative offense of which

13

Larios was convicted is the same in all respects, except it requires a mens rea of only recklessness. Our focus, then, is whether the "least culpable conduct hypothetically necessary to sustain a conviction," *Moreno*, 887 F.3d at 163, for that alternative offense is turpitudinous.

Our precedent provides guidance on when recklessness constitutes a turpitudinous mental state and, conversely, when it does not. We deemed a mens rea of recklessness turpitudinous for both New Jersey's second-degree aggravated assault offense, *Baptiste v. Att'y Gen.*, 841 F.3d 601, 623 (3d Cir. 2016), and New York's reckless endangerment offense, *Knapik*, 384 F.3d at 93, explaining that there were two "aggravating factors" in the each statute: "serious bodily injury" to another, N.J. Stat. Ann. § 2C:12-1b(1), or "grave risk of death to another person," N.Y. Penal Law § 120.25, and "extreme indifference to the value of human life," N.J. Stat. Ann. § 2C:12-1b(1), or "a depraved indifference to human life," N.Y. Penal Law § 120.25. *See Baptiste*, 841 F.3d at 622; *Knapik*, 384 F.3d at 90. Although these statutes required a mens rea of only recklessness, the two aggravating factors ensured the least culpable conduct encompassed by these statutes was still "inherently base, vile, or depraved." *Baptiste*, 841 F.3d at 621; *see Knapik*, 384 F.3d at 89.

In contrast, we concluded recklessness was not turpitudinous in Pennsylvania's reckless endangerment statute because there was not even one statutory aggravating factor. That statute criminalizes "conduct that *may* put a person in danger," *Mahn*, 767 F.3d at 175, and thus could hypothetically cover "even an individual who drives through a red light on an empty street or speeds down an empty thoroughfare," *id.* at 174. Focusing on the "least culpable

14

conduct," we concluded that traffic offenses "do[] not implicate moral turpitude." *Id.* at 172.

Here, the BIA did not articulate what, if any, aggravating factors it identified in § 2C:12-3(a), and we perceive none. Whereas the statutes at issue in *Baptiste* and *Knapik* targeted conduct that risks death or serious injury to another person, New Jersey's terroristic-threats statute criminalizes threats that merely carry the risk of "convey[ing] menace or fear of a crime of violence" to another person, New Jersey Model Criminal Jury Charge, § 2C:12-3(a), at 2; and whereas those statutes required a mental state exhibiting "extreme" and "depraved" indifference to a person's life, New Jersey defines recklessness to include "heedless[ness]," "foolhardi[ness]," or "scorn for the consequences" of causing fear in another, *id.* at 3. New Jersey's terroristic-threats statute, therefore, lacks the type of aggravating factors that we have previously recognized would make an offense inherently vile and depraved.

The Government contends otherwise, pointing us to two purported statutory aggravating factors. In addition to the required mental state of "purpose" or "reckless disregard," the Government argues, there must both be a "threat" and "a crime of violence" that is the subject of that threat. Resp't Br. 25 (internal quotation marks omitted).[3] The argument comes up short.

---

[3] As the alternative offense of which Larios was convicted does not concern "serious public inconvenience," we will not address the Government's argument that this would also constitute a statutory aggravating factor. *See* Resp't Br. 25.

15

As to the first factor, the Government reads into the lone word "threat" an "additional, intentional 'layer' to the mens rea requirement" because it "suggests that the perpetrator must initially commit a purposeful act." Resp't Br. 32–33. But we already rejected that argument when reviewing Pennsylvania's terroristic-threats statute in *Bovkun v. Ashcroft*, 283 F.3d 166 (3d Cir. 2002). There, we held a "threat[] to commit a crime of violence" was simply the actus reus, *id.* at 170 (alteration in original) (quoting 18 Pa. Cons. Stat. § 2706), and did not carry its own implicit mens rea, independent of that specified in the statute. We reaffirm that holding here: Where a statute specifies the mens rea, courts ordinarily interpret it as applying throughout the statute, *see Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019), and here, nothing in the text, New Jersey law, or our precedent suggests we should stray from that ordinary construction.[4]

---

[4] In support of its construction, the Government cites *Javier*, where we held one alternative of Pennsylvania's terroristic-threats statute is a CIMT, in part, because of "the psychological distress that follows from [a threat's] invasion of another's sense of personal security." 826 F.3d at 131 (quoting *Commw. v. Fenton*, 750 A.2d 863, 865 (Pa. Super. Ct. 2000)). But the Government places too much weight on *Javier*, as our analysis there relied on Pennsylvania law, and we did not find the threat alone to be a CIMT, but rather emphasized the match hinged on "the communication of the threat *and its requisite scienter*"—namely, "a specific 'intent to terrorize.'" *Id.* (emphasis added) (quoting 18 Pa. Cons. Stat. § 2706(a)(1)). The New Jersey alternative of which Larios was convicted is missing half the equation because, as we have explained, the least culpable conduct is only a reckless threat.

The Government's second factor fares no better. Although we agree that the term "crime of violence" does not encompass simple assault under New Jersey law, it does encompass other crimes lacking in the vileness and depravity required for a statutory aggravating factor. *See Baptiste*, 841 F.3d at 621. Neither New Jersey law nor the Model Penal Code defines "crime of violence," but we draw on the federal definition of that term, as we did in *Bovkun*: "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Bovkun*, 283 F.3d at 169 (quoting 18 U.S.C. § 16(a)). So the least culpable conduct under § 2C:12-3(a) would be a threat to commit an offense involving the use of physical force against a person's property in reckless disregard of the risk of terrorizing that person—conduct the Government contends is necessarily vile and depraved.

Yet New Jersey's criminal code demonstrates otherwise: The offense of criminal mischief, for example, involves "tamper[ing] with tangible property of another so as to endanger person or property" and causing "pecuniary loss of $500 or more," N.J. Stat. Ann. § 2C:17-3(a)(2), so a threat to commit that particular "crime of violence" would include a threat to "chip[] away at the patio bricks around the porch of [a neighbor's] property," *State in Interest of A.H.*, 697 A.2d 964, 965 n.1 (N.J. Super. Ct. 1997). No doubt, threats to engage in this type of conduct would be unwelcome and un-neighborly, but they do not rise to the level of depraved or extreme indifference to the risk of causing serious bodily injury or death.[5] *See Baptiste*, 841 F.3d at 622; *Knapik*, 384 F.3d at

---

[5] Given that "crime of violence" encompasses property crimes, it falls short even of "conduct that may put *a person* in

17

90; *see, e.g.*, *Matter of C.P.M.*, 223 A.3d 616, 620 (N.J. Super. Ct. App. Div. 2019) (damaging property); *State in Interest of D.P.*, 556 A.2d 335, 336 (N.J. Super. Ct. 1989) (same); *State v. Clarke*, 486 A.2d 935, 937 (N.J. Super. Ct. App. Div. 1985) (same).

The Government also doubles down on the BIA's reasoning that it "ha[d] not identified any case resulting in a conviction under this statute for far less serious conduct than" a prototypical terroristic threat, such as "yelling 'bomb' in a sporting arena or a crowded movie theater, or a student declaring that he is going to open fire in a school." A.R. 7. In support, it cites a slew of New Jersey cases signifying that prosecutions under § 2C:12-3(a) are generally limited to such egregious conduct. But that is neither here nor there: We have held that this "realistic probability" analysis is inapplicable when assessing crimes of moral turpitude under the categorical (or modified categorical) approaches.[6] *See Jean-Louis*, 582 F.3d at 471–73. *Cf. Cabeda v. Att'y Gen.*, 971 F.3d 165, 175–76 (3d Cir. 2020) (declining to apply realistic-probability analysis in the absence of a categorical match between elements). Instead, we have treated "the possibility of

danger," which we rejected as a statutory aggravating factor in *Mahn*, 767 F.3d at 175 (emphasis altered).

[6] We do not defer to the BIA's recent opinion classifying Minnesota's terroristic-threats statute, also based on the Model Penal Code, as a CIMT because it focuses on "the minimum conduct that has a realistic probability of being prosecuted under the statute," *In re Salad*, 27 I. & N. 733, 734 (BIA 2020), and we rejected that approach in *Jean-Louis*, 582 F.3d at 471–73.

conviction for non-turpitudinous conduct, however remote," as sufficient to render the alternative overbroad.[7] *Jean-Louis*, 582 F.3d at 471.

In sum, Larios's crime of conviction has a minimum mens rea of recklessness but lacks any statutory aggravating factors, so the least culpable conduct is a reckless threat to commit a violent property crime, which under *Baptiste*, *Knapik*, and *Mahn*, is not turpitudinous. Larios's offense of conviction therefore does not qualify as a CIMT under the modified categorical approach. *See Javier*, 826 F.3d at 130–31; *Hillocks*, 934 F.3d at 339.

## IV.    Conclusion

After more than a decade of litigation, Larios has finally established he was not convicted of a crime involving moral turpitude, and the BIA erred in finding him ineligible for

---

[7] In any event, the Supreme Court has approved a realistic-probability analysis only where "the relevant elements [for both the state statute and the generic offense] were identical," *Singh*, 839 F.3d at 286 n.10 (discussing *Moncrieffe v. Holder*, 569 U.S. 184 (2013), and *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007)); *Cabeda*, 971 F.3d at 175–76, which does not appear to be the case here. The term "crime involving moral turpitude" is not defined in 8 U.S.C. § 1182(a)(2)(A)(i)(I), and even if the statute listed the elements of the generic offense, it is exceedingly unlikely they would be an identical match with the elements of New Jersey's terroristic-threats statute. *See Jean-Louis*, 582 F.3d at 477 (noting that "moral turpitude" will rarely, if ever, be "an element of the underlying offense").

cancellation of removal on that basis. Accordingly, we will grant the petition for review and remand to the agency for proceedings consistent with this opinion.