**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3100
_____

PATRICK JUNIOR KING,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. A205-905-449)
Immigration Judge:  Kuyomars Q. Golparvar
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 19, 2022
_____

Before:  CHAGARES, Chief Judge, McKEE and PORTER, Circuit Judges

(Filed: October 13, 2022)
_____

OPINION[*]
_____

**CHAGARES**, Chief Judge.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Patrick Junior King petitions this Court to review a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ") order of removal. For the reasons that follow, we will grant the petition for review.

I.[1]

King, a native and citizen of Jamaica, arrived in the United States in August 2016 pursuant to a visa, which later expired. He pleaded guilty in January 2020 to third-degree felony fleeing or eluding a police officer in violation of 75 Pa. Cons. Stat. § 3733(a). The Government initiated removal proceedings and charged King as removable for having overstayed his visa and for having been convicted of a crime involving moral turpitude ("CIMT") within five years of entering the United States. See 8 U.S.C. §§ 1227(a)(1)(B), (a)(2)(A)(i). King later married a United States citizen and has applied to adjust to the status of lawful permanent resident.

The IJ held a hearing and issued an opinion. The IJ decided that King had conceded both of the removability charges and so did not analyze whether the felony fleeing conviction qualifies as a CIMT. The BIA determined on appeal that this was error because King had not conceded the CIMT issue. The BIA therefore considered whether the conviction qualifies as a CIMT, concluding that a Pennsylvania felony fleeing conviction is categorically a CIMT because it involves a culpable mental state of

_____

[1] Because we write for the parties, we recite only those facts pertinent to our decision.

willfulness and applies to reprehensible conduct.[2]  King timely filed this petition for review.

II.[3]

Central to this matter is whether King's felony conviction for fleeing or eluding qualifies as a CIMT.  That crime is defined under Pennsylvania law as follows:

> (a) Offense defined.-- Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

> (a.2) Grading -- . . .

> (2) An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:

>> (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance);

>> (ii) crosses a State line; or

>> (iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

75 Pa. Cons. Stat. § 3373.

---

[2] The IJ and BIA addressed additional issues, including whether King should be entitled to a waiver of inadmissibility under 8 U.S.C. § 1182(h).  Because our decision to grant the petition for review is limited to the CIMT issue, we will not discuss the other aspects of the agency decisions.

[3] The BIA had jurisdiction over the appeal of the IJ's decision under 8 C.F.R. § 1003.1(b).  We have jurisdiction to review the BIA's final order of removal pursuant to 8 U.S.C. § 1252(a)(1).  We review the BIA's legal conclusions de novo.  Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014).  Because the BIA's decision is unpublished and issued by a single board member, it is not entitled to deference.  Larios v. Att'y Gen., 978 F.3d 62, 67 (3d Cir. 2020).

3

We assess the statute by employing the categorical approach, looking to the statutory elements of the offense rather than the specific actions that led to the conviction. Jean-Louis v. Att'y Gen., 582 F.3d 462, 465–66 (3d Cir. 2009). We ask whether the "least culpable conduct hypothetically necessary to sustain a conviction" under the statute involves moral turpitude.[4] Larios v. Att'y Gen., 978 F.3d 62, 70 (3d Cir. 2020) (quoting Moreno v. Att'y Gen., 887 F.3d 160, 163 (3d Cir. 2018)). The least culpable conduct must be reprehensible and be committed with some level of consciousness or deliberation in order to qualify as turpitudinous. Javier v. Att'y Gen., 826 F.3d 127, 130 (3d Cir. 2016).

Pennsylvania's felony fleeing statute criminalizes willful behavior and thus satisfies the scienter requirement for a CIMT. 75 Pa. Cons. Stat. § 3733(a) ("Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer . . ." (emphasis added)).

---

[4] We employ the modified categorical approach if a statute is divisible and the relevant documents permit us to determine the specific provision under which a defendant was convicted. Larios, 978 F.3d at 67–68. Here, the fleeing statute is divisible between the felony and misdemeanor portions because different punishments apply to each, see Mathis v. United States, 579 U.S. 500, 518 (2016), and the guilty plea (a Shepard document) shows that King was convicted of the felony offense. We need not determine whether a felony fleeing conviction is further divisible as to the three aggravating sub-sections set forth in § 3733(a.2)(2) because, even if it is, the record does not specify which sub-section applies to King's fleeing conviction. We must therefore apply the categorical approach to the entirety of the felony portion of the statute in any event. See Partyka v. Att'y Gen., 417 F.3d 408, 416 (3d Cir. 2005).

4

The least culpable conduct covered by the statute is not, however, sufficiently reprehensible to qualify.

We first reject the Government's position that the felony portion of the statute does not extend to a failure to stop. Section (a) defines the misdemeanor offense as applying to "[a]ny driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop." 75 Pa. Cons. Stat. § 3733(a). Although the felony portion of the statute does not repeat the "fails or refuses" phrase, it incorporates subsection (a). See 75 Pa. Cons. Stat. § 3733(a.2)(2) ("An offense under subsection (a) constitutes a felony of the third degree if . . ."). Moreover, the statute's use of the term "otherwise" suggests that "fleeing" encompasses both one who "fails to bring a vehicle to a stop" and one who "refuses to bring a vehicle to a stop." See Otherwise, Black's Law Dictionary (11th ed. 2019) (defining "otherwise" as "[i]n a different way; in another manner" or "[b]y other causes or means"). In other words, the use of "otherwise" indicates that failing or refusing to stop is simply another manner of fleeing or eluding.

We conclude that the "least culpable conduct" encompassed by the felony version of the statute is a scenario in which "[a]ny driver of a motor vehicle . . . willfully fails or refuses to bring his vehicle to a stop" and "crosses a State line." 75 Pa. Cons. Stat. §§ 3733(a), (a.2)(2)(ii). We therefore must next determine whether this least culpable

5

conduct is, as a matter of law, "inherently base, vile, or depraved."[5] Knapik v. Ashcroft, 384 F.3d 84, 89 (3d Cir. 2004).

In Mahn v. Att'y Gen., we held that a misdemeanor conviction that "may place another person in danger of death or serious bodily injury" was not a CIMT because a traffic offense where no other person is necessarily placed in danger does not categorically involve moral turpitude. 767 F.3d 170, 174 (3d Cir. 2014) (emphasis added) (quoting 18 Pa. Cons. Stat. § 2705). Similarly, the Court of Appeals for the Ninth Circuit concluded in Ramirez-Contreras v. Sessions that a California fleeing statute — which, like the Pennsylvania statute, does not include an element of danger or injury to another person — is not a CIMT because it "criminalizes a swath of conduct that simply does not rise to that level." 858 F.3d 1298, 1304 (9th Cir. 2017).

Recognizing that the Pennsylvania statute does not expressly include an element of danger or injury to others, the Government responds that vehicular flight inherently gives rise to such a risk. In support of its view, the Government relies primarily upon Sykes v. United States, 564 U.S. 1, 10 (2011). Not only did Sykes arise in a different context and not consider whether the statute at issue was a CIMT, it has since been overruled, so its analysis is of dubious value here. See Johnson v. United States, 576

---

[5] The BIA considered the "the minimum conduct that has a realistic probability of being prosecuted under the statute" rather than the least culpable conduct encompassed by the statute. App. 14. This was error. The "realistic probability" test does not apply to a CIMT analysis. Larios, 978 F.3d at 72 ("We have held that th[e] 'realistic probability' analysis is inapplicable when assessing crimes of moral turpitude under the categorical (or modified categorical) approaches."); Jean-Louis, 582 F.3d at 481 (observing that importation of the "realistic probability" test to the CIMT context is "wrong-headed").

U.S. 591, 606 (2015). The Government further suggests "crossing state lines escalates the confrontation between the offender and law enforcement and invites violent confrontation." Gov't Br. 36. Yet while such conduct may increase the likelihood of violent confrontation in some situations, our focus must remain on the least culpable conduct prohibited by the statute.

The plain language of the statute, coupled with the reasoning of Mahn and Ramirez-Contreras, persuades us that the Pennsylvania felony fleeing statute does not qualify as turpitudinous. While the failing to stop for a police officer while crossing a state line is conduct that may put another in danger, it does not necessarily do so. The agency therefore erred in its conclusion that King was convicted of a CIMT.

III.

For the foregoing reasons, we will grant the petition for review.[6]

---

[6] The agency's erroneous legal conclusion that King was convicted of a CIMT pervaded its assessment of King's claims, including the denial of a waiver of inadmissibility. See, e.g., Appendix ("Appx.") 22 (agreeing with the IJ that a heightened standard applies because "fleeing or attempting to elude a police officer necessarily entails dangerous conduct"). We therefore will not reach King's remaining arguments and instead will remand the matter to the agency to consider King's claims in light of this opinion.