**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4377
_____

EMMANUEL MAHN,
                              Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-780-110)
Immigration Judge: Hon. Andrew R. Arthur

Argued: June 25, 2014

Before: McKEE, *Chief Judge*, FUENTES and
GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: September 17, 2014)

Wayne P. Sachs, Esq. **[ARGUED]**
1518 Walnut Street, Suite 702
Philadelphia, PA 19102
        *Attorney for Petitioner*

Charles S. Greene, III, Esq.
Zoe J. Heller, Esq.
Andrew B. Insenga, Esq. **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
        *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Emmanuel Mahn petitions for review of his final order of removal and contends that his Pennsylvania conviction for reckless endangerment is not a crime involving moral turpitude ("CIMT"). Applying the categorical approach, we conclude that the least culpable conduct punishable under Pennsylvania's reckless endangerment statute does not implicate moral turpitude. Therefore, we grant Mahn's petition for review and vacate the BIA's removal order.

## I.      Factual and Procedural Background

Emmanuel Mahn is a citizen of Liberia. In 2000, he entered the United States as a refugee. Nearly five years later, he adjusted his status to lawful permanent resident.

In 2007, Mahn pled guilty in the Court of Common Pleas of Delaware County, Pennsylvania to theft by deception and forgery. *See* 18 Pa. Cons. Stat. Ann. § 3922(a); 18 Pa. Cons. Stat. Ann. § 4101(a).

The following year, Mahn pled guilty in the Court of Common Pleas to recklessly endangering another person. *See* 18 Pa. Cons. Stat. Ann. § 2705. According to the affidavit of probable cause and Mahn's testimony during his removal proceedings, Mahn had just picked his sister up from work. As he was driving out of the parking lot, he lost control of his car and crashed into the garage and laundry room of a house located across the street. Although no one was injured, Mahn's car damaged the garage door and laundry room of the house.

In December 2011, the Department of Homeland Security issued Mahn a Notice to Appear, charging that he was removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for having "been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct." AR 409. This charge was based on: (1) Mahn's convictions for forgery and theft by deception, which were later deemed to arise from the same criminal scheme, and (2) his conviction for reckless endangerment. Mahn filed a motion to terminate his removal proceedings, asserting that his reckless endangerment conviction did not qualify as a CIMT.

The Immigration Judge denied Mahn's motion to terminate. The IJ pointed out that this Court in *Knapik v.*

3

*Ashcroft*, 384 F.3d 84, 90 (3d Cir. 2004), determined that reckless endangerment, in violation of New York Penal Law § 120.25, qualifies as a CIMT. The IJ concluded that, "consistent with *Knapik*, reckless endangerment under the Pennsylvania statute in question is a crime involving moral turpitude." AR 320. The IJ also held that Mahn's convictions for forgery and theft by deception constituted CIMTs. Accordingly, the IJ ruled that Mahn was removable as charged. At a subsequent merits hearing, the IJ denied Mahn's applications for relief and protection from removal, and the IJ ordered Mahn removed to Liberia.

Mahn appealed to the Board of Immigration Appeals ("BIA"). On appeal, he argued that his reckless endangerment conviction was not a CIMT. The BIA affirmed the IJ's ruling in an unpublished, non-precedential decision rendered by a single Board member. Relying on *Knapik*, the BIA held that Mahn's reckless endangerment conviction constituted a CIMT because "the statute under which [he] was convicted defines recklessness as a conscious disregard of a substantial risk of such a nature that it amounts to a gross deviation from the standard of care of a reasonable person" and is "coupled with the requirement that the conduct place another person in danger of death or serious bodily injury." AR 4. On these grounds, the BIA dismissed the appeal. Mahn subsequently filed this petition for review.

## II.    Standard of Review

"Where, as here, the BIA issues a written decision on the merits, we review its decision and not the decision of the IJ." *Bautista v. Att'y Gen.*, 744 F.3d 54, 57 (3d Cir. 2014) (citing *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir.

4

2010)). Typically, we review the BIA's legal conclusions *de novo* subject to the principles of deference set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *See Bautista*, 744 F.3d at 58. While we do not defer to the "BIA's parsing of the elements of the underlying crime," we generally accord deference to "the BIA's determination that a certain crime involves moral turpitude when that determination is reasonable." *Mehboob v. Att'y Gen.*, 549 F.3d 272, 275-76 (3d Cir. 2008) (citing *Knapik*, 384 F.3d at 88).

In this case, however, *Chevron* deference is inappropriate because we are asked to review an unpublished, non-precedential decision issued by a single BIA member. Following *United States v. Mead Corp.*, 533 U.S. 218 (2001), "we accord *Chevron* deference only to agency action promulgated in the exercise of congressionally-delegated authority to make rules carrying the force of law." *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348 (3d Cir. 2010) (citing *Mead*, 533 U.S. at 226-27). Unpublished, single-member BIA decisions are not "promulgated" under the BIA's authority to "make rules carrying the force of law." *Id.* To the contrary, these "decisions have no precedential value, do not bind the BIA, and therefore do not carry the force of law except as to those parties for whom the opinion is rendered." *Id.* at 350. Since *Mead*, several Courts of Appeals have declined to apply *Chevron* deference to unpublished, single-member BIA decisions. *See, e.g.*, *Arobelidze v. Holder*, 653 F.3d 513, 520 (7th Cir. 2011); *Carpio v. Holder*, 592 F.3d 1091, 1097-98 (10th Cir. 2010); *Barrios v. Holder*, 581 F.3d 849, 859 (9th Cir. 2009); *Quinchia v. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008); *Rotimi v. Gonzales*, 473 F.3d 55, 57-58 (2d Cir. 2007). We join our sister circuits in concluding that

5

unpublished, single-member BIA decisions are not entitled to *Chevron* deference. At most, these decisions are persuasive authority. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

## III. Discussion

The Department of Homeland Security charged Mahn as removable under 8 U.S.C. § 1227(a)(2)(A)(ii). That provision sets forth that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). It is undisputed that Mahn's convictions for forgery and theft by deception constitute CIMTs arising from a single scheme of criminal misconduct and that these convictions arose from a distinct scheme from his reckless endangerment conviction. Thus, Mahn's removability turns on whether his reckless endangerment conviction also is a CIMT.

While the Immigration and Nationality Act does not define the term "moral turpitude," the BIA and this Circuit have defined morally turpitudinous conduct as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *See Knapik*, 384 F.3d at 89. "[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." *Partyka v. Att'y Gen.*, 417 F.3d 411, 414 (3d Cir. 2005). Furthermore, it "is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude." *Totimeh v. Att'y Gen.*, 666 F.3d 109, 114 (3d Cir. 2012) (quotation marks omitted).

We apply the categorical approach to assess whether a conviction qualifies as a CIMT. *See Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465-66 (3d Cir. 2009). Under the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.,* the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In particular, "we look to the elements of the statutory offense to ascertain the least culpable conduct hypothetically necessary to sustain a conviction under the statute." *See Jean-Louis*, 582 F.3d at 471 (citing *Partyka*, 417 F.3d at 411). The "possibility of conviction for non-turpitudinous conduct, however remote, is sufficient to avoid removal." *Id.*

Mahn's statute of conviction provides that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."[1] 18 Pa. Cons.

---

[1] The mental state of "recklessness" is virtually identical under the New York statute at issue in *Knapik* and under Pennsylvania law. In New York, "[a] person acts recklessly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk" that is "of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.05(3). In Pennsylvania, "[a] person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk" that is "of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its

---

Stat. Ann. § 2705. Moral turpitude does not inhere in all violations of section 2705, as the least culpable conduct criminalized under this statute is merely reckless conduct that "*may* place another person in danger of . . . serious bodily injury." *Id.* (emphasis added). Thus, even an individual who drives through a red light on an empty street or speeds down an empty thoroughfare could be punished under section 2705 so long as he or she has a reckless *mens rea*. Though unlawful, such traffic offenses do not always rise to the level of "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality." *See Knapik*, 384 F.3d at 89.

The BIA erroneously relied on *Knapik* to conclude that Mahn's conviction for reckless endangerment was a CIMT. Contrary to the BIA's claims, the New York reckless endangerment statute at issue in *Knapik* is not analogous to Mahn's statute of conviction. The statute we examined in *Knapik* provides that a "person is guilty of reckless endangerment in the first degree when, *under circumstances evincing a depraved indifference to human life*, he recklessly engages in conduct which *creates a grave risk of death to another person*." N.Y. Penal Law § 120.25 (emphasis added). Applying *Chevron* deference, we held that the BIA did not unreasonably conclude that a conviction under New York Penal Law § 120.25 is a CIMT because the statute "contains aggravating factors, requiring that a defendant create a 'grave risk of death to another person' 'under circumstances evincing a depraved indifference to human life.'" *Knapik*, 384 F.3d at 90 (quoting § 120.25). In contrast to New York's

---

disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. Cons. Stat. Ann. § 302(b)(3).

reckless endangerment statute, Mahn's statute of conviction does not contain the aggravating factors of depraved indifference to human life and grave risk of death to another person. Moreover, unlike the New York statute, which requires reckless conduct that creates a *grave* risk of endangerment, section 2705 only requires conduct that *may* put a person in danger. Such conduct does not necessarily implicate moral turpitude. Therefore, we conclude that a conviction under section 2705 does not constitute a CIMT.

## IV.     Conclusion

Because the least culpable conduct punishable under section 2705 is not morally turpitudinous, Mahn's reckless endangerment conviction does not qualify as a CIMT. Accordingly, we grant Mahn's petition for review and vacate the BIA's order of removal.