NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2906
_____

SONIA CRUZ-HERNANDEZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. BIA-1: A205-722-426)
Immigration Judge:  Roxanne C. Hladylowycz
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 21, 2016

Before:  FISHER, GREENAWAY, JR. and ROTH, *Circuit Judges*.

(Filed: August 3, 2016)
_____

OPINION*
_____

_____

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

FISHER, *Circuit Judge*.

Petitioner Sonia Cruz-Hernandez asks us to review an order of the Board of Immigration Appeals (BIA) dismissing her appeal from an immigration judge's decision denying her application for withholding of removal under the Immigration and Nationality Act and the Convention Against Torture. We hold that substantial evidence supported the BIA's decision and will deny the petition for review.

I

We write principally for the parties, who are familiar with the factual context and legal history of the case. Therefore, we set forth only those facts that are necessary to our analysis.

Cruz-Hernandez is a citizen of Honduras. In May 2014, Cruz-Hernandez illegally reentered the United States after having been removed from the United States in 2012. The Department of Homeland Security conducted a review and ordered that Cruz-Hernandez's 2012 removal order be reinstated. Cruz-Hernandez applied for withholding of removal under the Immigration and Naturalization Act and the Convention Against Torture. She had a withholding proceeding before an immigration judge, and she testified about her situation in Honduras as follows:

Cruz-Hernandez had a relationship with Orbin Ramon Rodriguez-Mesa and together they had a son. Although Cruz-Hernandez and Rodriguez-Mesa never legally married, she considered herself married to him. Cruz-Hernandez's relationship with Rodriguez-Mesa ended and they separated. Cruz-Hernandez remained close with Rodriguez-Mesa's family and lived with Rodriguez-Mesa's

2

father and mother, her son's grandparents. Cruz-Hernandez worked at an Internet café owned by her son's grandmother. The grandparents also owned a successful farm.

In April 2013, the family began receiving threats from individuals in the community who demanded that Cruz-Hernandez's son's grandfather give them money and his farm. In July 2013, the family Internet café business was burglarized. A month later, two men came to the Internet café while Cruz-Hernandez was working. One of the men had a gun in his waistband and told Cruz-Hernandez that he would kill her and her son if she said anything to the authorities about the theft or threats. Two other men similarly threatened her in September 2013. Later in September, Cruz-Hernandez's son's grandfather was shot to death while walking home at night. None of his personal belongings had been taken. Cruz-Hernandez believed that he was killed in retaliation for refusing to turn over his land and money.

After the murder, Cruz-Hernandez's son's grandmother and others in the family continued receiving threats. Cruz-Hernandez felt that she was a prisoner in her own house. She came to the United States with her son in May 2014. Cruz-Hernandez remained in contact with the family while these immigration proceedings were ongoing in the United States, and she reported that the threats against the family have continued. Her son's grandmother still owns the farmland, but she had to close the Internet café. Cruz-Hernandez feels it would be unsafe to return anywhere in Honduras.

The immigration judge found that Cruz-Hernandez's testimony was credible. Nevertheless, the immigration judge denied her applications, finding

3

that she had not established that she was part of a particular social group, that her son's grandfather was murdered due to his membership in that social group, that she could not safely live in another part of Honduras, that the government of Honduras was unwilling or unable to help her, and that she would more likely than not be harmed if she returned to Honduras. Cruz-Hernandez appealed this decision to the BIA. The BIA dismissed the appeal because the immigration judge's finding that Cruz-Hernandez had not established a clear probability of persecution or torture was not clearly erroneous.

Cruz-Hernandez filed a petition for review of the BIA decision. Cruz-Hernandez argues that the BIA should not have applied the clearly erroneous standard to the immigration judge's decision. Cruz-Hernandez raised numerous other arguments in her opening brief, but these arguments relate to issues considered by the immigration judge and not addressed by the BIA. Our review is limited to the BIA's decision, and therefore we do not consider these alternative arguments.[1]

## II

We have jurisdiction over this petition for review under 8 U.S.C. § 1252(a)(1). Where the BIA decides a matter on the merits, we review the decision of the BIA, not that of the immigration judge.[2] We consider the BIA's legal conclusions de novo.[3] We review the BIA's factual findings under the

---

1.  *Kaplun v. Attorney Gen.*, 602 F.3d 260, 265 (3d Cir. 2010).

2.  *Id.*

3.  *Mahn v. Attorney Gen.*, 767 F.3d 170, 173 (3d Cir. 2014). This de novo review is generally subject to *Chevron* deference, but where, as here, we are

substantial evidence standard and will reverse those findings only "if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did."[4]

An alien is entitled to withholding of removal under the Immigration and Nationality Act "if the Attorney General decides that the alien's life or freedom would be threatened in [the country the alien is removed to] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."[5] The applicant bears the burden of establishing a clear probability that the applicant's life or freedom would be threatened, meaning that it must be more likely than not that the applicant would be subject to persecution.[6] To constitute persecution, the actor causing the harm must be the government or forces that the government is unwilling or unable to control.[7]

The BIA dismissed Cruz-Hernandez's appeal because it concluded that the immigration judge did not commit clear error in finding that Cruz-Hernandez had not established a clear probability of persecution in Honduras. Cruz-Hernandez asserts that whether she established a clear probability of persecution is a mixed question of law and fact that the BIA should have reviewed de novo. It is a mixed question of law and fact, but we nevertheless conclude that the BIA applied, if inarticulately, the correct standard.

---

reviewing an unpublished decision of a single member of the BIA, *Chevron* deference does not apply. *Id.*

4. *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003).

5. 8 U.S.C. § 1231(b)(3)(A).

6. *Toussaint v. Attorney Gen.*, 455 F.3d 409, 413 (3d Cir. 2006).

7. *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).

An immigration judge's predictive judgment of the likelihood of harm based on the facts in the record is a factual finding reviewed for clear error.[8] Here, the immigration judge found that Cruz-Hernandez's fear of harm upon return to Honduras was undercut by the fact that her family members, including her son's grandmother, have remained unharmed in Honduras. The BIA correctly reviewed this factual finding for clear error.

Other aspects of the ultimate question of whether Cruz-Hernandez established a clear probability of persecution are legal issues. For example, "persecution" itself is a legal term of art, and whether harm rises to the level of persecution is a legal question that the BIA reviews de novo.[9] The BIA did not need to address this legal question in this case. Having found that Cruz-Hernandez had not shown that she was likely to be harmed upon returning to Honduras, the BIA did not need to consider whether any harm would amount to persecution.[10]

The BIA was correct to cite *Kaplun* for the proposition that "determinations as to the likelihood of future events are reviewed for clear error."[11] In this formulation, however, "future events" refers to specific factual occurrences such as imprisonment, extortion, or physical harm.[12] This is distinct from the ultimate

---

8. *See Kaplun*, 602 F.3d at 270 (considering the likelihood of torture).

9. *See id.* at 271 ("Torture is a term of art, and whether imprisonment, beating, and extortion are severe enough to rise to the level of torture is a legal question.").

10. Cruz-Hernandez argued in her brief that the BIA must first review de novo whether or not the harm Cruz-Hernandez fears will occur upon return to Honduras constitutes persecution, but she offered no authority for this proposition and we do not find it meritorious.

11. (A.R. 4.)

12. *See Kaplun*, 602 F.3d at 270–71.

question of whether an applicant established a clear probability of persecution (or torture), which is a not a pure question of fact. The BIA thus misstated the standard of review. But because the BIA actually based its decision on a factual finding—the likelihood Cruz-Hernandez would be harmed if she returned to Honduras—we conclude that there was no reversible error. The BIA did not erroneously apply a clear error standard to any legal questions.

Having concluded that the BIA applied the correct standard of review, we now ask whether substantial evidence supported the BIA's finding that Cruz-Hernandez had not established a clear likelihood of harm in Honduras. We conclude that there is substantial evidence. Although Cruz-Hernandez was threatened, she was never physically harmed. Her son's grandmother has also received threats, but she continues to own the family's land and she has not been harmed. These facts are sufficient to persuade a rational factfinder that Cruz-Hernandez had not established a clear likelihood of harm, and the substantial evidence standard is accordingly met.[13]

Cruz-Hernandez also appealed the BIA's dismissal of her appeal of the denial of her application for withholding of removal under the Convention Against Torture. Her brief, however, contains no separate arguments relating to the Convention Against Torture. To the extent that this argument is not waived, we conclude that the BIA's decision is correct for the same reasons as its decision under the Immigration and Naturalization Act.

---

13. *See In re A-E-M-*, 21 I. & N. Dec 1157, 1160 (B.I.A. 1998) (finding that an applicant's fear of persecution is undercut when his family remains in the country of origin unharmed).

## III

For the reasons set forth above, we will deny Cruz-Hernandez's petition for review.