**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1810
_____

LOUIS ROSARIO-OVANDO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of
the Board of Immigration Appeals
Agency No. BIA-1:A063-874-567
Immigration Judge: Lisa de Cardona

_____

Argued: March 31, 2022
_____

Before: CHAGARES, *Chief Judge*, SHWARTZ, *Circuit Judge*,
and PRATTER, *District Judge.*[*]

(Filed: June 21, 2022)

---

[*] Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Christopher R. Healy [ARGUED]
Troutman Pepper Hamilton Sanders
Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103

Rosina C. Stambaugh
2930 Carol Road
Suite A
York, PA 17402
         Counsel for Petitioner

Merrick B. Garland
Taryn L. Arbeiter
Rebekah Nahas [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
         Counsel for Respondent

_____

OPINION**

_____

PRATTER, *District Judge*.

Petitioner Louis Rosario-Ovando faces removal from the United States because of his conviction under Pennsylvania's felony fleeing or eluding statute within five years of his arrival in this country. Both the Immigration Judge and Board of Immigration Appeals

---

**     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

determined this conviction was for a "crime involving moral turpitude." We disagree for the reasons outlined below. Therefore, we will grant the petition.

## I. BACKGROUND

Mr. Rosario-Ovando is a native and citizen of the Dominican Republic. He was admitted to the United States as a lawful permanent resident on October 14, 2014. Mr. Rosario-Ovando was charged by information on January 14, 2019, with several offenses allegedly committed on November 25, 2018. After the District Attorney dismissed certain of the charges, Mr. Rosario-Ovando pled guilty to two of those offenses on May 23, 2019, five months shy of the fifth anniversary of his admittance. As relevant here, he pled guilty to the commission of the felony of fleeing or attempting to elude a police officer in violation of 75 Pa. Cons. Stat. § 3733(a.2)(2). In addition, in wholly unrelated matters, on September 24, 2019, Mr. Rosario-Ovando was convicted of two counts of retail theft in violation of 18 Pa. Cons. Stat. § 3929(a)(1).

The Department of Homeland Security (DHS) initiated removal proceedings against Mr. Rosario-Ovando in October 2019 by serving a notice to appear in immigration court. At that time, DHS charged Mr. Rosario-Ovando with removability under 8 U.S.C. § 1227(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct at any time after admission, *i.e.*, the fleeing or eluding conviction and the retail theft convictions.

The Immigration Judge initially sustained the charge of removability on this basis. Mr. Rosario-Ovando moved to terminate the removal proceedings on the ground that the two retail theft convictions were then on direct appeal and, thus, were not final for

3

immigration status purposes. DHS opposed Mr. Rosario-Ovando's motion, and also filed an additional charge of removability. DHS charged Mr. Rosario-Ovando with removability under 8 U.S.C. § 1227(a)(2)(A)(i), alleging that his felony fleeing or eluding conviction was a crime involving moral turpitude, was committed within five years of Mr. Rosario-Ovando's admission to the United States, and was a crime for which a sentence of one year or longer may be imposed.

Mr. Rosario-Ovando again filed a motion to terminate the removal proceedings, which DHS opposed. At another hearing, the Immigration Judge vacated the earlier finding that Mr. Rosario-Ovando was removable because the retail theft convictions were indeed then on direct appeal.[1] The Immigration Judge did, however, find Mr. Rosario-Ovando removable on the basis that his conviction for felony fleeing or attempting to elude a police officer was a crime involving moral turpitude committed within five years of admission for which a sentence of one year or longer may be imposed.

As is important at this stage of the parties' dispute, the Immigration Judge found that the traffic statute under which Mr. Rosario-Ovando was convicted, 75 Pa. Cons. Stat. § 3733, was divisible between its misdemeanor and felony provisions. As a result, the Immigration Judge applied the modified categorical approach to determine whether Mr. Rosario-Ovando's conviction was a crime involving moral turpitude. The Immigration Judge noted that Mr. Rosario-Ovando's conviction record does not state or suggest which of the three "aggravating factors" under 75 Pa. Cons. Stat. § 3733(a.2)(2) led to the

---

[1] Both parties agree that these retail theft convictions are no longer a basis for Mr. Rosario-Ovando's removal. Thus, we will not address this issue further.

conviction for a third-degree felony. App. 15.[2] Nonetheless, the Immigration Judge found that *all three* of the "aggravating factors" that transform a misdemeanor into a felony categorically involved moral turpitude. *Id.*

The Board of Immigration Appeals affirmed. Like the Immigration Judge, the Board applied the modified categorical approach and reached the same conclusion that a conviction under any or all of the three felony "aggravating factors" under 75 Pa. Cons. Stat. § 3733(a.2)(2) was a crime involving moral turpitude. App. 4–6.

Mr. Rosario-Ovando timely petitioned this Court, 8 U.S.C. § 1252(b)(1), which we have jurisdiction to review, *id.* § 1252(a)(1), (a)(5).

## II. STANDARD OF REVIEW

Where the Board of Immigration Appeals adopts the findings and discusses the bases of an Immigration Judge's decision, our Court has authority to review *both* the Immigration Judge's and the Board's decisions. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). We review the Board's legal conclusions *de novo*. *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014). Where, as here, the Board issues an "'unpublished, non-precedential decision issued by a single [Board] member,'" we accord no deference to the Board's decision nor " 'the [Board's] parsing of the elements of the underlying state crime.'" *Larios v. Att'y Gen.*, 978 F.3d 62, 67 (3d Cir. 2020) (quoting *Mahn*, 767 F.3d at 173). Unpublished single-member Board decisions are not entitled to any deference under

---

[2] There are two records applicable to this case. There is the Administrative Record, forwarded to this Court by the Department of Justice, and the Appendix, prepared by Mr. Rosario-Ovando. For ease of reference, the Administrative Record will be cited as "AR" while the Appendix will be cited as "App."

5

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984), because they are not promulgated under the Board's authority to "make rules carrying the force of law." *Mahn*, 767 F.3d at 173 (internal quotation marks omitted); *United States v. Mead Corp.*, 533 U.S. 218, 226–227 (2001). In that circumstance, we consider the Board's decision to be, at most, persuasive authority. *See Mahn*, 767 F.3d at 173 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

### III.   ANALYSIS

Under the Immigration and Nationality Act, a noncitizen is removable if he:

> (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and
>
> (II) is convicted of a crime for which a sentence of one year or longer may be imposed[.]

8 U.S.C. § 1227(a)(2)(A)(i). Here, there is no dispute that the crime for which Mr. Rosario-Ovando was convicted is punishable by more than one year in prison. 75 Pa. Cons. Stat. § 3733(a.2)(2); 18 Pa. Cons. Stat. § 106(b)(4) (making a third-degree felony punishable by up to seven years in prison). Thus, the dispute centers on the first subsection, whether the crime for which Mr. Rosario-Ovando was convicted and for which DHS initiated removal proceedings is a crime involving moral turpitude.

To be a crime involving moral turpitude, there is both an *actus reus* requirement and a *mens rea* requirement, which draw on "long-established [Board] principles and decisions of our Court." *Larios*, 978 F.3d at 69 (quoting *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004)). The *actus reus* must be "a reprehensible act that is inherently base, vile, or depraved contrary to the accepted rules of morality and the duties owed to other persons,

6

either individually or to society in general." *Id.* (internal quotation marks omitted). The *mens rea* must be "of an appreciable level of consciousness or deliberation, signifying a vicious motive or a corrupt mind." *Id.* at 69–70 (quoting *Javier v. Att'y Gen.*, 826 F.3d 127, 130–31 (3d Cir. 2016)).

Before turning to that analysis, however, we must determine the proper approach to analyze the statute under which Mr. Rosario-Ovando was convicted.

## A.    The Modified Categorical Approach and the Categorical Approach

When a state conviction has federal immigration consequences, we use either the categorial approach or the modified categorical approach to determine whether the petitioner's conviction is for a crime involving moral turpitude. Both approaches permit us to consider only the elements of the crime of conviction.

If the statutory basis of a petitioner's conviction is clear, then, applying the "categorical approach," a court considers only the elements of the crime and asks whether the "least culpable conduct hypothetically necessary to sustain a conviction under the statute" is a crime involving moral turpitude. *Larios*, 978 F.3d at 67 (quoting *Moreno v. Att'y Gen.*, 887 F.3d 160, 163 (3d Cir. 2018)).

However, if a court cannot decipher the statutory basis for a petitioner's conviction, such as when "(1) the statute of conviction has alternative elements, and (2) at least one of the alternative divisible categories would, by its elements," be a crime involving moral

turpitude, then the court applies the "modified categorical approach."[3] *Id.* (quoting

*Hillocks v. Att'y Gen.*, 934 F.3d 332, 339 (3d Cir. 2019)). Under the modified categorical

approach, we may peek at "'a limited class of documents' specified by the Supreme Court

to determine which alternative version of the crime formed the basis for a petitioner's

conviction." *Larios*, 978 F.3d at 69 (quoting *Mathis v. United States*, 579 U.S. 500, 505

(2016)). These documents are known as "*Shepard* documents," and include the "charging

document, written plea agreement, transcript of plea colloquy, and any explicit factual

finding by the trial judge to which the defendant assented," but do *not* include "police

reports or complaint applications." *Shepard v. United States*, 544 U.S. 13, 16 (2005);

*accord Larios*, 978 F.3d at 69. Once a court has identified the specific statutory basis of

the conviction, it then applies the categorical approach. *United States v. Peppers*, 899 F.3d

211, 231–32 (3d Cir. 2018).

Here, the parties agree that the Pennsylvania statute at issue is divisible between the

misdemeanor and felony portions of the statute. The Government, arguing in support of

the Immigration Judge's and the Board's decisions, avers that a conviction under *any* of

---

[3] The parties dispute whether the three subsections of Pennsylvania's felony fleeing or eluding statute are separate *elements* or actually *factual means* of committing a single element. *See Mathis v. United States*, 579 U.S. 500, 506 (2016). This is because if the separate elements are "disjunctive factual scenarios rather than separate elements," the statute is not further divisible. *Id.* Pennsylvania court have settled this dispute, concluding in *Commonwealth v. Bowen* that the subsections of Pennsylvania's felony fleeing and eluding offense "introduced additional elements which must be proven beyond a reasonable doubt." 55 A.3d 1254, 1268 (Pa. Super. Ct. 2012); *see also Pennsylvania Suggested Standard Criminal Jury Instructions*, Pa. SSJI (Crim), § 17.3733 (requiring jury to indicate on the verdict form whether it also finds a defendant engaged in conduct indicated in the subsections "beyond a reasonable doubt").

the three felony aggravating elements is a crime involving moral turpitude. Mr. Rosario-Ovando, on the other hand, argues that the least culpable conduct under the Pennsylvania fleeing or eluding statute is not a crime involving moral turpitude. In other words, the parties argue that application of the modified categorical approach obliges us to apply the categorical approach to the felony portion of Pennsylvania's fleeing or eluding statute in its entirety. We agree.

All of the *Shepard* documents in the case and other documents state only that Mr. Rosario-Ovando was convicted under the Pennsylvania felony fleeing or eluding statute generally; they do not identify any specific felony aggravating element. The criminal information cites only § 3733 and states only that he was sentenced on Counts One and Two, which included the felony portion of § 3733. Similarly, the statement accompanying Mr. Rosario-Ovando's request to enter a guilty plea only references the generic § 3733 felony offense. In that same document, in the space to write out the elements of the offense to which Mr. Rosario-Ovando pled guilty, it again avers generically "the Defendant refused to bring his vehicle to a stop when a police officer gave a visual and audible signal to stop." App. 23. That document further states, "[i]f agreeing to the probable cause affidavit as a factual basis of the plea, attach the probable cause affidavit to this colloquy—this should be initialed by the Defendant." *Id*. The probable cause affidavit was neither attached to the colloquy nor initialed by Mr. Rosario-Ovando. It appears that the probable cause affidavit was, instead, attached to the criminal complaint. But that is irrelevant because, as we have explained elsewhere, under Pennsylvania criminal law, a criminal information supersedes a criminal complaint, meaning the complaint "is not the relevant charging document and is

9

not an appropriate source under the modified categorical approach." *Evanson v. Att'y Gen.*, 550 F.3d 284, 293 n.7 (3d Cir. 2008). In sum, all of the *Shepard* documents state only generally that Mr. Rosario-Ovando was convicted under the felony portion of § 3733 but do not specify which felony aggravating element formed the basis for his conviction.

If, as is the case here, the *Shepard* documents at which the Court can peek do not demonstrate which of the alternative elements the immigrant was convicted under, the Court is left to determine if the least culpable conduct that violates the statute constitutes a crime involving moral turpitude. *Partyka v. Att'y Gen.*, 417 F.3d 408, 416 (3d Cir. 2005).

In the alternative, anticipating that it might lose if the Court applies the categorical approach, the Government posits three theories as to why we should, instead, remand this case to the Board to apply the modified categorical approach. First, the Government argues that we should remand this case for the Board to analyze whether the Pennsylvania fleeing or eluding statute is further divisible by the three felony aggravating elements. Because the three aggravators are alternative elements as a matter of Pennsylvania law, *see Bowen*, 55 A.3d at 1268, the statute is divisible and the modified categorical approach applies. *See Mathis*, 136 S. Ct. at 2248–49. Remand is not necessary to resolve this legal issue.

Second, the Government argues that the recent Supreme Court decision in *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021), alters the list of documents that we may consider when engaging in the modified categorical approach. In that case, the Supreme Court discussed 8 U.S.C. § 1229a(c)(3)(B), which specifies the sources of information a noncitizen may use to prove that he was *not* convicted of a crime involving moral turpitude when seeking a cancellation of a removal application. At the very end of its opinion, the

Supreme Court stated, in dicta, that it was not "clear whether these many listed forms of proof are meant to be the only permissible ways of proving a conviction, or whether they are simply assured of special treatment when produced." *Id.* at 767. Clinging to that, and anticipating the Court's resistance to compelling a meaningless act, the Government argues that remand to the Board would *not* be futile because the Board could consider the probable cause affidavit.

This argument fails, however. First, as a matter of plain textual interpretation, the list of documents in 8 U.S.C. § 1229a(c)(3)(B) does not include either the criminal complaint or the probable cause affidavit. Second, the criminal complaint in this case has been superseded, meaning it is not the operative document. *Evanson*, 550 F.3d at 293 n.7. In light of our precedent, we need not decide if the Supreme Court's dicta expands the list of documents that may be considered under the modified categorical approach, a question not in front of the Supreme Court in *Pereida*. Third, even if *Pereida* did somehow expand the list of documents we may consider under the modified categorical approach, the probable cause affidavit provides no proof of Mr. Rosario-Ovando's *conviction*. Instead, it merely gives the police officer's account of what happened that day. The Government's approach would require us to infer from that account which of the three felony subsections forms the basis of Mr. Rosario-Ovando's conviction. But we must only examine the statute and the record of conviction, not the underlying factual conduct. *Partyka*, 417 F.3d at 411; *Knapik*, 384 F.3d at 88. Thus, remand to the Board for further consideration of the record in light of the Supreme Court's decision in *Pereida* would, indeed, be futile.

11

Finally, the Government argues that the transcript of Mr. Rosario-Ovando's guilty plea in 2019 for the felony fleeing or eluding offense provides another basis for us to remand to the Board.[4] The Government argues that the plea transcript's mentions of a "written colloquy" and a "guilty plea colloquy," are references to the statement accompanying Mr. Rosario-Ovando's request to enter a guilty plea, which provides as the factual basis for the plea: "The Defendant drove away from the police while minor children were in car not in seat belts." App. 23. Based on this statement, the Government argues that we should remand for the Board to consider whether Mr. Rosario-Ovando's conviction was for "endanger[ing] a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase." 75 Pa. Cons. Stat. § 3733(a.2)(2)(iii).

This tact also falls short. The Government never made this legal argument in front of either the Immigration Judge or the Board and has now forfeited it. *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); *see also United States v. Brito*, 979 F.3d 185, 189 (3d Cir. 2020) (explaining the difference between waiver and forfeiture). Furthermore, the Government directed us to *Pereida* for a different point, though we think it is instructive here. As the Supreme Court explained, "the who, what, when, and where of a conviction . . . pose questions of fact" and "like any other fact, the party who bears the burden of proving these facts bears the risks associated with failing to do so." *Pereida*, 141 S. Ct. at 765. It is the Government's burden to prove a noncitizen is removable. 8 U.S.C.

---

[4] The transcript of the guilty plea proceeding was not included in the record presented to the agency and the agency, therefore, did not have the opportunity to consider it in the first instance.

§ 1229a(c)(3). The Government could have sought this 2019 transcript, which it now claims is "new evidence," during the proceedings before the agency. It did not. We will not give the Government a do-over now.

Therefore, because the record does not establish which of the three aggravating factors was the basis for the felony conviction, we must apply the categorical approach to the felony portion of Pennsylvania's fleeing or eluding statute in its entirety. *Partyka*, 417 F.3d at 416; *Peppers*, 899 F.3d at 232. Under the categorical approach, a court must "read the applicable statute to ascertain the least culpable conduct necessary to sustain a conviction under the statute." *Partyka*, 417 F.3d at 411. In this context, and stated slightly differently, "a criminal statute defines a crime involving moral turpitude only if all of the conduct it prohibits is turpitudinous." *Id.* (quoting *Smalley v. Ashcroft*, 354 F.3d 332, 336 (5th Cir. 2003)). Thus, we turn next to interpreting the Pennsylvania statute under which Mr. Rosario-Ovando was convicted.

**B.      The Pennsylvania Felony Fleeing or Eluding Statute Under Which Mr. Rosario-Ovando Was Convicted**

Mr. Rosario-Ovando was convicted under 75 Pa. Cons. Stat. § 3733(a), which is titled "Fleeing or attempting to elude police officer." That statute reads:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

*Id.* That offense, by itself, is a second-degree misdemeanor. *Id.* § 3733(a.2)(1). Such an offense can, however, become a third-degree felony under certain circumstances:

13

An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:

> (i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance);

> (ii) crosses a State line; or

> (iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

75 Pa. Cons. Stat. § 3733(a.2)(2).

The parties dispute both the prohibited *actus reus* and the applicable *mens rea* standard. Thus, we first turn to interpreting Pennsylvania's fleeing or eluding statute in order to discern the least culpable conduct to which the statute applies.

## 1.      *Actus Reus*

Neither the Immigration Judge nor the Board construed the elements of this statute. But, even if they had, it would be our duty to review such legal determinations *de novo*. *Partyka*, 417 F.3d at 411.

Section 3733(a) defines the misdemeanor fleeing or eluding offense as "[a]ny driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, *or who otherwise flees or attempts to elude a pursuing police officer*, when given a visual and audible signal to bring the vehicle to a stop." 75 Pa. Cons. Stat § 3733(a) (emphasis added). Any of four prohibited actions is a violation of the misdemeanor provision. *Commonwealth v. Wise*, 171 A.3d 784, 790 (Pa. Super. Ct. 2017) ("[A] driver who fails or refuses to stop, *or* flees, *or* attempts to elude a pursing officer, commits the offense."); *Pennsylvania Suggested Standard Criminal Jury Instructions*, Pa. SSJI (Crim), § 17.3733. As further support, at least one Pennsylvania court has interpreted "fleeing" to be separate

14

and different from "attempting to elude a police officer," concluding that "fleeing" did not require a pursuing police officer. *Wise*, 171 A.3d at 789–90. The parties disagree, however, as to the conduct prohibited by the felony portion of the statute even though misdemeanor fleeing or eluding is a lesser included offense.

On the one hand, the Government reads the felony portion of § 3733 narrowly and argues that a person commits the felony *only* when fleeing or attempting to elude a pursuing police officer *plus* engaging in conduct specified in one of § 3733(a.2)(2)'s subsections. This is based on the language of § 3733(a.2)(2) which states that a person commits a felony if committing any of the three acts in the subsections "*while fleeing or attempting to elude a police officer.*"[5] 75 Pa. Cons. Stat. § 3733(a.2)(2) (emphasis added). In other words, according to the Government, felony fleeing or eluding only prohibits the more serious fleeing or attempting to elude and does *not* include failing to stop or refusing to stop.[6]

On the other hand, Mr. Rosario-Ovando argues that a person commits a felony by failing to stop, refusing to stop, fleeing, or attempting to elude a pursuing police officer plus engaging in one of the actions in § 3733(a.2)(2). He argues that the felony provision refers back to "[a]n offense under subsection (a)," meaning that the felony provision

---

[5] The Government also relies on *Commonwealth v. Morrison*, No. 646 MDA 2019, 2019 WL 5549312, at *2 (Pa. Super. Ct. Oct. 28, 2019), for the proposition that "the defendant must be driving a motor vehicle; an officer must give a signal to stop; and there must be a high-speed chase." But, as Mr. Rosario-Ovando rightly points out, *Morrison* only determined that § 2705 (recklessly endangering another person) contained at least one additional element than § 3733(a.2)(2) so as to conclude that a violation of § 2705 was *not* a lesser included offense of § 3733. *Morrison*, 2019 WL 5549312, at *2. *Morrison* says nothing about the particular issue before us and does not merit further discussion.

[6] The Immigration Judge came to the conclusion now advanced by the Government. But we owe this determination no deference. *Partyka*, 417 F.3d at 411.

incorporates all violations of the misdemeanor portion, § 3733(a). 75 Pa. Cons. Stat. § 3733(a.2)(2). He next argues that the language "if the driver *while fleeing or attempting to elude a police officer*" is more naturally read to refer to the title of the statute, which is "Fleeing or attempting to elude police officer." 75 Pa. Cons. Stat. § 3733 (emphasis added). In other words, Mr. Rosario-Ovando argues that when the felony portion states "while fleeing or attempting to elude a police officer," it is more reasonably read as "*committing the offense* of fleeing or attempting to elude."[7]

No Pennsylvania court has yet faced this precise issue or definitively construed 75 Pa. Cons. Stat. § 3733 in this context. Nonetheless, in a semantic sense, the parties are both right. That is because the statute is best read to define "fleeing" as encompassing both one who "fails to bring his vehicle to a stop" and one who "refuses to bring his vehicle to a stop." We briefly explain.

First, the plain meaning of § 3733(a) does not support the Government's argument. Pennsylvania courts apply the Statutory Construction Act, 1 Pa. Cons. Stat. § 1501 *et seq.*, "which provides that the object of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Commonwealth. v. McCoy*, 962 A.2d 1160, 1166 (Pa. 2009) (citing 1 Pa. Cons. Stat. § 1921(a)). Generally, "a statute's

---

[7] There are two "well-established" rules regarding the usefulness of titles when interpreting statutes: "(1) The title cannot control a statute's plain words; and, (2) In case of ambiguity, the title may help resolve uncertainty by extending or restraining an act's purview or correcting obvious errors." 2A N. Singer & S. Singer, *Sutherland Statutes and Statutory Construction* § 47:3 (7th ed. 2014, 2021 Update). Because we conclude that the plain words of § 3733 resolve this problem, we do not reach Mr. Rosario-Ovando's contention that the felony portion of § 3733 uses the title of the statute to incorporate all of the misdemeanor portion.

plain language . . . provides the best indication of legislative intent." *Id.* A court will only "look beyond the plain language of the statute . . . when words are unclear or ambiguous, or the plain meaning would lead to 'a result that is absurd, impossible of execution or unreasonable.' " *Commonwealth v. Hall*, 80 A.3d 1204, 1211 (Pa. 2013) (quoting 1 Pa. Cons. Stat. § 1922(1)).

Here, the plain meaning of § 3733 resolves this dispute. The meaning of "otherwise" is "[i]n a different way; in another manner" or "[b]y other causes or means." *Otherwise*, *Black's Law Dictionary* (11th ed. 2019). Thus, the phrase "otherwise flees" in § 3733(a) is defining failing or refusing to stop as another way or manner of fleeing. This makes sense because the plain meaning of "flee" is broad, meaning "[t]o run away; to hasten off" or "[t]o run away or escape from danger, pursuit, or unpleasantness; to try to evade a problem." *Flee*, *Black's Law Dictionary* (11th ed. 2019). In short, the plain language of "or who otherwise flees" under § 3733 incorporates both failing to stop and refusing to stop. This result is not absurd, impossible of execution, or unreasonable. This begins and ends our inquiry.

Nonetheless, to understand the point, the "rule of the last antecedent" also supports this outcome. Under this rule, "a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)); 2A Singer & Singer, *supra*, § 47:33 ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent."). Here, the phrase "or who otherwise flees or attempts to elude a pursuing police officer," which is offset by

17

commas, is a referential phrase that refers back to the last antecedent phrase, "fails or refuses to bring his vehicle to a stop." Thus, the felony portion of § 3733 that says "[a]n offense under subsection (a) constitutes a felony of the third degree if the driver *while fleeing or attempting to elude a police officer*" does not further narrow the prohibited conduct outlined in the misdemeanor portion, but, likely as shorthand, uses the phrase that already encompasses failing to stop and refusing to stop.

Finally, under Pennsylvania law, courts do not interpret criminal statutes as narrowly as the Government contends. Although Pennsylvania courts do strictly construe criminal statutes, " 'courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent.' Thus, we will not adopt the strictest possible interpretation if doing so would defeat the plain intent of the legislature." *Commonwealth v. Johnson*, 125 A.3d 822, 831 (Pa. Super. Ct. 2015) (quoting *Commonwealth v. Brown*, 956 A.2d 992, 996 (Pa. Super. Ct. 2008)). That the Government's argument here cuts against the plain meaning of the statutory text is yet another reason to reject it.

Therefore, we conclude that the felony portion of § 3733 prohibits the same four actions proscribed in the misdemeanor portion of § 3733.

### 2. Mens Rea

Under § 3733(a), the driver of the motor vehicle must act "willfully" when failing or refusing to stop, fleeing, or attempting to elude a pursuing police officer. 75 Pa. Cons. Stat. § 3733(a); *Wise*, 171 A.3d at 789 n.2 (defining "willfully" under Pennsylvania law); Pa. SSJI (Crim), § 17.3733. The parties agree at this threshold, but they disagree as to

18

whether the *mens rea* standard of "willfully" carries through to *all* of the felony subsections under § 3733(a.2)(2).

Mr. Rosario-Ovando, invoking *Commonwealth v. Collins*, 810 A.2d 698, 703 (Pa. Super. Ct. 2002), contends that all three of the felony subsections are strict liability offenses. The Government does not engage with this argument, because, in its view, it does not matter—the felony portion of § 3733 is a crime involving moral turpitude with the "willfully" element applying to the stop regardless of the *mens rea* standard for any of the felony subsections.

Again, no Pennsylvania court has squarely faced this issue or directly addressed the *mens rea* requirement for each of the subsections under the felony portion of § 3733. We express no opinion on this issue because we do not know the statutory subsection that formed the basis of Mr. Rosado-Ovando's conviction. In any case, we determine that the least culpable conduct constituting a felony under the statute would not be deemed a crime of moral turpitude even if committed willfully.

### C.     The Least Culpable Conduct Under Pennsylvania's Felony Fleeing or Eluding Statute

At this stage of the analysis, it is helpful to imagine a scenario that would involve the least culpable conduct under the statute as we construe it. *See, e.g. Partyka*, 417 F.3d at 414 (imagining negligent assault); *Hillocks*, 934 F.3d at 339 (imagining non-aggravated felony). The least culpable conduct under the felony portion of § 3733 as we have construed it would be one in which "[a]ny driver of a motor vehicle . . . willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police

officer, when given a visual and audible signal to bring the vehicle to a stop" and, who, in addition, willfully "crosses a State line." 75 Pa. Cons. Stat. §§ 3733(a), (a.2)(2)(ii).

Thus, one might imagine a person driving at the speed limit from Philadelphia to New Jersey on I-95. A police officer notices that the car's taillight is out or that the car's registration is expired and turns on his flashing lights. Perhaps the car is running out of gas or the driver desperately has to use a bathroom and the driver knows there is a rest stop about a half mile away. Rather than stopping for the officer, the driver willfully (meaning knowingly[8]) fails or refuses to stop ("otherwise flees") and plans to pull over at the rest stop to both deal with the traffic stop and to either refill the tank or use the restroom. Because the driver uses this same route every day, he knows that there is a rest stop about a half mile further along I-95 and also knows that the rest stop is just across the state border. The driver proceeds to the rest stop before pulling over, thus willfully (again, meaning knowingly) crossing a state line. Because the speed limit on that portion of I-95 is 65 miles per hour, the additional half mile of "fleeing" lasts approximately 30 seconds. We test the Government's argument against this scenario.

---

[8] Under Pennsylvania law, "[a] requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." 18 Pa. Cons. Stat. § 302(g).

> A person acts knowingly with respect to a material element of an offense when:
>> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

*Id.* § 302(b)(2).

There is, not surprisingly, no precise definition of "moral turpitude." We have stated that the phrase "defies a precise definition." *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 635 (3d Cir. 2002). Black's Law Dictionary defines it as "[c]onduct that is contrary to justice, honesty, or morality; esp., an act that demonstrates depravity." *Moral Turpitude*, *Black's Law Dictionary* (11th ed. 2019). The Board defines it as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." *Knapik,* 384 F.3d at 89. As a general rule, the Board asks "whether the act is accompanied by a vicious motive or a corrupt mind." *Partyka*, 417 F.3d at 413 (quoting *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (B.I.A. 1994)). Nevertheless, "[i]n recent years . . . the [Board] has found moral turpitude to inhere in serious crimes committed recklessly, *i.e.*, with a conscious disregard of a substantial and unjustifiable risk that serious injury or death would follow." *Id.* at 414. We have affirmed this conclusion. *Knapik*, 384 F.3d at 89–90 (affirming the Board's decision that first degree reckless endangerment under New York law was a crime involving moral turpitude where the criminal statute requires the actor to "consciously disregard" a "grave risk of death to another person" that the actor himself created).

As an initial point, our decision in *Mahn* is especially instructive here. In that case, we held that a misdemeanor conviction under a statute prohibiting reckless engagement in conduct which "*may* place another person in danger of death or serious bodily injury" was not a crime involving moral turpitude. *Mahn*, 767 F.3d at 174 (emphasis added) (quoting 18 Pa. Cons. Stat. § 2705). We reasoned that a traffic offense where no other person is actually placed in danger is not categorically a crime involving moral turpitude. *Id*. As we

21

have construed it, the least culpable conduct under the Pennsylvania felony fleeing or eluding statute similarly *may* put another in danger but does not inevitably do so. Thus, there may be good reason to end our inquiry with a comparison to *Mahn*. Nonetheless, we must also address other cases involving felony convictions arguably similar to the one at issue here.

Much of the caselaw on this particular issue, coming from our sister circuits, does not suggest an obvious outcome. On the one hand, none of our sister circuits have faced a similar conviction involving an aggravating element of crossing a state line. Instead, those other cases all involved convictions for more serious, or at least more dangerous, offenses than the one at issue here. To be sure, many of our sister circuits did find convictions under general felony fleeing or eluding statutes to be crimes involving moral turpitude and did so with broad language that arguably captures the facts of this case, if not the foregoing hypothetical.

As we might expect, the parties' arguments track this gap. Mr. Rosario-Ovando argues that the least culpable conduct is clearly not a crime involving moral turpitude and distinguishes this statute from those examined by our sister circuits. The Government latches onto the broad language from other circuits and argues that "crossing state lines escalates the confrontation between the offender and law enforcement and invites violent confrontation." Resp't's Br. at 24.

We agree with Mr. Rosario-Ovando. None of the statutes considered by our sister circuits involved a statute quite like the one at issue here. Instead, the other cases involved convictions that included as an element the risk of death or serious injury either to the

22

police officer, the general public, or both and, hence, are not ultimately instructive here, except in distinction.[9] In other words, the Government's argument that *any* flight from a police officer who has given a signal to stop, plus crossing a state line, is inherently dangerous proves too much. There is a significant difference between fleeing a police officer at more than 21 miles per hour over the speed limit, *see Mei v. Ashcroft*, 393 F.3d 737, 738 (7th Cir. 2004), or interfering with or endangering the police officer or the general public, *see Granados v. Garland*, 17 F.4th 475, 481 (4th Cir. 2021); *Cano-Oyarzabal v. Holder*, 774 F.3d 914, 917 (7th Cir. 2014); *Ruiz-Lopez v. Holder*, 682 F.3d 513, 517 (6th Cir. 2012), or creating the risk of injury or death, N.J. Stat. Ann. § 2C:29–2(b), on the

---

[9]     In *Mei v. Ashcroft*, the Court of Appeals for the Seventh Circuit concluded that a conviction under the Illinois aggravated fleeing or eluding law, requiring "fleeing at 21 or more miles per hour above the speed limit," was a crime involving moral turpitude. 393 F.3d 737, 738, 741–42 (7th Cir. 2004) (quoting 625 Ill. Comp. Stat. 5/11-204.1(a)(1)). Similarly, in *Ruiz-Lopez v. Holder*, the Court of Appeals for the Sixth Circuit concluded that a conviction under Washington state's felony feeling or eluding statute, requiring that the driver "drives his vehicle in a manner indicating a wanton or wil[l]ful disregard for the lives or property of others while attempting to elude a pursuing police vehicle," was a crime involving moral turpitude. 682 F.3d 513, 517, 521 (6th Cir. 2012) (quoting Wash. Rev. Code § 46.61.024). Likewise, in *Cano-Oyarzabal v. Holder*, the Court of Appeals for the Seventh Circuit concluded that a conviction under the Wisconsin fleeing and eluding statute, requiring that a driver "knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians," was a crime involving moral turpitude. 774 F.3d 914, 917, 919 (7th Cir. 2014) (quoting Wis. Stat. § 346.04(3)). Finally, in *Granados v. Garland*, the Court of Appeals for the Fourth Circuit concluded that a conviction under the Virginia felony eluding statute, requiring that a driver "drives . . . in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person," was a crime involving moral turpitude, 17 F.4th 475, 481 (4th Cir. 2021) (quoting Va. Code § 46.2-817(B)).

23

one hand, and, on the other hand, willfully failing or refusing to stop and willfully crossing a state line without placing any other person at risk or in danger.

Instead, we are more convinced by the reasoning of the Court of Appeals for the Ninth Circuit in *Ramirez-Contreras v. Sessions*, 858 F.3d 1298 (9th Cir. 2017). In that case, the Court considered the California fleeing or eluding law which makes it a crime "[i]f a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." *Id.* at 1301 (quoting Cal. Vehicle Code § 2800.2(a)). The statute then further defines "willful or wanton disregard for the safety of persons or property" as "driving while fleeing or attempting to elude a pursuing peace officer *during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur*, or damage to property occurs." *Id.* (quoting Cal. Vehicle Code § 2800.2(b)) (emphasis added). That Court reasoned that the three traffic violations under Section 12810 could be "relatively innocuous sorts of conduct," including driving without the proper registration, violating the California emissions standards, and failing to stop after an accident involving only property damage. *Id.* at 1304. Moreover, the Court specifically discussed the other cases embraced by the Government and detailed here but found them inapplicable to the least culpable conduct under the California statute because "those cases penalized willful conduct that increased the risk of harm to others." *Id.* at 1305. We agree with this commonsense analysis.

Perhaps recognizing that none of these out-of-circuit cases directly supports its position, the Government resorts to *Sykes v. United States*, 564 U.S. 1 (2011), and

24

*United States v. Jones*, 740 F.3d 127 (3d Cir. 2014), both of which determined that certain crimes were "violent felonies" within the meaning of the residual clause of the Armed Career Criminal Act. True, as the Government points out, our opinion in *Jones* held that a misdemeanor conviction under the same Pennsylvania fleeing or eluding statute constituted a crime of violence for purposes of sentencing. *Jones*, 740 F.3d at 137–38. In coming to that conclusion, we explicitly invoked the Supreme Court's holding in *Sykes* that the "[r]isk of violence is inherent to vehicle flight" because "the intervening pursuit creates high risks of crashes." *Id.* at 137 (quoting *Sykes*, 564 U.S. at 10).

The Government's reliance on these cases, however, is inapposite. For one, both cases were interpreting a statutory provision not at issue in this case. And the Supreme Court later held that provision, the residual clause of the Armed Career Criminal Act, to be unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 606 (2015). In that same decision the Supreme Court also explicitly overruled *Sykes*. *Id.* Thus, our earlier reliance in *Jones* on the reasoning and holding of *Sykes* has been undermined. Plus, as our hypothetical above illustrates, a conviction under Pennsylvania's fleeing or eluding statute does not automatically and inherently involve the use, attempted use, or threatened use of *any* physical force or violence. Therefore, although we have not explicitly overruled *Jones* with a precedential opinion, we reject the Government's reliance on it.

Therefore, we conclude that the least culpable conduct constituting a felony conviction under Pennsylvania's fleeing or eluding statute, 75 Pa. Cons. Stat. § 3733(a.2)(2)(ii), is not a crime involving moral turpitude.

## IV.  CONCLUSION

Because the least culpable conduct criminalized by the three aggravating elements of Pennsylvania's felony fleeing or eluding statute is not a crime involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(i), Mr. Rosario-Ovando's crime of conviction does not provide a basis for removal. We reject the Government's request for a remand so the Board may apply the modified categorical approach because we have resolved the legal issue and because remand for further consideration of the record would be futile. Therefore, we will grant Mr. Rosario-Ovando's petition.